**Harold Wade PIKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**James Nelson PIKE, Sr., Appellant**

v.

**The STATE of Texas, Appellee.**

Nos. 10–86–065–CR, 10–86–066–CR, 10–86–137–CR and 10–86–138 CR.

Court of Appeals of Texas, Waco.

Aug. 25, 1988.

Rehearing Denied in No. 10–86–137–CR Sept. 22, 1988.

---

Burt E. Powell, Robert A. Sparks, Attorney at Law, P.C., William L. Willis, Cleburne, for appellant James Pike.

W. Burton Baker, Jr., Lummus, Hallman, Pritchard & Baker, Cleburne, for appellant Harold Pike.

Dan M. Boulware, Dist. Atty., Robert A. Lawing, Asst. Dist. Atty., Cleburne, for appellee.

## OPINION

THOMAS, Justice.

James Pike and Harold Pike were tried together under four separate indictments for organized criminal activity. The State alleged that they conspired to commit the aggravated manufacture of methamphetamine and the aggravated delivery of methamphetamine. *See* Tex. Penal Code Ann. § 71.02(a)(5) (Vernon Supp.1988). The jury convicted them on all counts and assessed punishment for each at 99 years in prison and a $150,000 fine. The appeals are consolidated and both convictions will be affirmed.

The Pikes, who are brothers, headed an organization of approximately 20 people involved in the manufacture and distribution of methamphetamine. They operated methamphetamine laboratories in Tarrant, Johnson, and Brown counties and in Clay County, Alabama. Large quantities of methamphetamine produced by these laboratories were distributed by the Pikes and others in Texas and Tennessee.

Becky R. and Renee B., ages 13 and 15 at the time of the trial, testified that Harold Pike delivered methamphetamine to them on numerous occasions during the life of the conspiracy. Each girl paid for the drugs by having sex with him.

Harold argues in points 7 through 10 that the girls' testimony was irrelevant, and even if relevant, should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury or needless presentation of cumulative evidence. *See* Tex.R.Cr.Evid. 403. He also claims the evidence should have been excluded because the sex-for-drugs exchanges constituted extraneous offenses.

Relevant evidence is that which tends to make the existence of any fact which is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex.R. Cr.Evid. 401. All relevant evidence is admissible unless otherwise provided by constitution, statute or other rules of law. *Id.* at 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. *Id.* at 403.

This case was tried before the Texas Rules of Criminal Evidence became effective on September 1, 1986. However, Texas courts had long followed these basic evidentiary rules before their codification. *See e.g., Johnson v. State,* 698 S.W.2d 154, 160 (Tex.Cr.App.1985); *Templin v. State,* 711 S.W.2d 30, 33 (Tex.Cr.App.1986); *Robinson v. State,* 701 S.W.2d 895, 896 (Tex. Cr.App.1985). Determining the relevancy of evidence and balancing its probative value with the danger of unfair prejudice is within the discretion of the trial judge, and his determination will not be disturbed on appeal except for a clear abuse of discretion. *Templin,* 711 S.W.2d at 33.

■ The Pikes were each charged with conspiring "to commit the offense of Un-

lawful Delivery of a Controlled Substance, to-wit: Methamphetamine of more than 400 grams ... to a person or persons unknown to the Grand Jury." Becky's and Renee's testimony was relevant because it tended to make more probable that the conspiracy to deliver methamphetamine had been carried out, and that Harold Pike had intended to and had actually delivered methamphetamine "to a person or persons."

The question remains whether, considering the record as a whole, the court abused its discretion when it admitted the relevant testimony. *Marras v. State*, 741 S.W.2d 395, 404 (Tex.Cr.App.1987). The court has "substantial discretion" in weighing the probative value of evidence on the one hand and the danger of its "unfair prejudice" on the other. *Rodda v. State*, 745 S.W.2d 415, 419 (Tex.App.—Houston [14th Dist.] 1988, no pet.) (citing *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978)). Furthermore, Rule 403 does not establish a "mere imbalance" as the standard for excluding relevant testimony, but provides that it "may" be barred only if its probative value is "substantially outweighed" by its prejudicial effect. *Id.* The trial judge, not an appellate court, is in the best position to assess the extent of the prejudice, if any exists. *Id.* Considering the record as a whole, the court did not abuse its discretion when it admitted Becky's and Renee's testimony because it was direct evidence of delivery of methamphetamine by one of the co-conspirators in furtherance of the conspiracy.

Harold Pike also contends the evidence of his sex-for-drugs exchanges should have been excluded because it constituted extraneous offenses. An extraneous offense is any act of misconduct which is not shown in the charging instrument and which is alleged to have been committed by the accused. *Gomez v. State*, 626 S.W.2d 113, 114 (Tex.App.—Corpus Christi 1981, pet. ref'd).

The State alleged that Harold Pike and 20 others agreed to manufacture and deliver methamphetamine. The deliveries from Harold to Becky and Renee occurred during the life of the conspiracy and in furtherance of the conspiracy. These acts, as stated above, were admissible because they constituted direct evidence that Harold had delivered drugs during the conspiracy. The sexual acts were not extraneous offenses, but were evidence proving an element of the offenses alleged in the indictment. Harold's points 7 through 10 are overruled.

James Pike contends in point 2 that the court erred when it admitted the testimony of Becky and Renee as evidence of Harold's guilt because of its prejudicial "spill over effect" of his own guilt. He argues their testimony was so prejudicial and inflammatory that the limiting instruction, which the court included in the charge, could not cure its prejudicial effect.

That James was not present at or directly involved in the sex-for-drugs deliveries does not absolve him of criminal liability for Harold's actions. Undisputed evidence showed that the conspiracy existed, that the Pikes and their cohorts were co-conspirators, and that the purpose of the conspiracy was to share the profits from the manufacture and delivery of methamphetamine. Once the evidence established a conspiracy, acts done by the Pikes in furtherance of the conspiracy were attributable to each conspirator, and the co-conspirators were equally liable for these acts. *See* Tex. Penal Code Ann. § 7.02(b) (Vernon 1974); *Snow v. State*, 721 S.W.2d 943, 948 (Tex.App.—Houston [1st Dist.] 1986, no pet.). Evidence that Harold had delivered drugs to Becky and Renee, regardless of the form of consideration for the delivery, was evidence of the conspiracy, and was properly admitted as evidence of the guilt of both Harold and James Pike. James' point 2 is overruled.

The Pikes argue that the court erred when it denied their motions for a severance. James claims in point 1 that he was entitled to a severance because the testimony of Becky and Renee created a prejudicial joinder. Harold alleges in points 16 and 17 that he was entitled to a severance and a mistrial because of the limiting instruction in the charge that the jury was not to consider evidence of his sexual mis-

conduct with Becky and Renee as evidence of James' guilt. He contends the instruction prejudiced, inflamed and confused the jury because it impliedly informed the jury that, though it could not consider evidence of his sexual misconduct as evidence of James' guilt, it could conversely consider the sexual misconduct as evidence of his own guilt.

Without a showing of prejudice to one of the defendants in a joint trial or evidence that one defendant has a prior admissible conviction, the granting or denial of a motion for a severance is within the judge's discretion. Tex. Code Crim.Proc.Ann. art. 36.09 (Vernon 1981). His decision will be disturbed on appeal only upon a showing of a clear abuse of discretion. *Morales v. State,* 466 S.W.2d 293, 296 (Tex.Cr.App. 1970).

■ James Pike asserts that he was prejudiced by a joint trial because there were varying degrees of guilt between him and Harold Pike, and because their defenses were inconsistent. Different degrees of culpability between codefendants is not enough to establish an abuse of discretion from the denial of a motion for a severance. *Id.* Furthermore, James and Harold did not testify, and the record does not indicate their defenses were inconsistent. Because the testimony of Becky and Renee was admissible against the Pikes as co-conspirators, the joint trial did not result in prejudice to either. Accordingly, the court did not abuse its discretion when it denied James' motion for a severance, and his point 1 is overruled.

■ The instruction in the charge, that the jury was not to consider evidence of Harold's sexual misconduct with Becky and Renee as evidence of James' guilt, did not prejudice Harold. Such evidence was admissible against him, and the court did not abuse its discretion when it denied his motion for a severance and for a mistrial. Harold's points 16 and 17 are overruled.

During Becky's testimony, the State sought to introduce two photographs into evidence. After they were marked for identification and Becky had identified the two people in the photographs as herself and Harold Pike, the following occurred:

Q Can you tell me where these photographs were taken?

A Sandpiper [Motel].

Q Okay. And is this part of the kind of thing that you would make for the methamphetamine?

A Yes.

Q Do those pictures truly and accurately represent what was happening at the Sandpiper that day?

A Yes.

The photographs were offered into evidence and counsel for Harold Pike objected based on their irrelevance and prejudicial effect. The State then withdrew their offer of both photographs, and neither was admitted into evidence. Defense counsel asked the court to instruct the jury that it could not consider the testimony concerning the photographs and moved for a mistrial, but the court overruled both motions.

Harold contends in point 11 that the court erred when it refused to give the requested instruction and declare a mistrial. He argues that, though the exhibits were withdrawn, they were calculated to inflame the minds of the jury and were of such character as to suggest that the impression created in the minds of the jurors could not be withdrawn by the withdrawal of the offer of the exhibits.

■ Generally, a photograph depicting an act or scene is admissible if a verbal description of such act or scene would be admissible. *Heckert v. State,* 612 S.W.2d 549, 551 (Tex.Cr.App.1981). Becky had already testified in some detail about her sexual involvement with Harold Pike. Although the photographs were not admitted, they apparently depicted sexual activity between her and Harold at the Sandpiper Motel. Because evidence that Becky had traded sex with Harold for drugs was admissible, photographs depicting such activity would have also been admissible. Accordingly, no harm could have resulted from the photographs being identified and offered, but never admitted into evidence. Harold's point 11 is overruled.

■ Ken Ariola, a Department of Public Safety (DPS) narcotics officer, was the sponsoring witness for exhibits 7, 8, 9 and 10. These exhibits, which depicted production costs, wholesale costs to distributors, street prices, metric conversions, and profit potential for the methamphetamine operation, were prepared by Ariola and the Technical Services Department of the DPS. Harold Pike complains in points 1 through 6 that the court erred when it admitted these exhibits over his hearsay objections, refused to instruct the jury to disregard the exhibits, and refused to grant a mistrial because of their prejudicial effect.

Ariola testified that he had been a narcotics officer for 11 of the 17 years he had been employed with the DPS, that he had been involved in the investigation of over 150 methamphetamine laboratories, and that his responsibilities included reviewing intelligence reports and estimating the value of drugs produced by methamphetamine laboratories. Ariola had prepared the charts from information he received from the district attorney's office and DPS investigators.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise. Tex. R.Cr.Evid. 702. An expert may base his opinion upon facts or data either perceived by him or made known to him at or before the hearing. *Id.* at 703. If the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, then such facts and data need not be admissible in evidence. *Id.*

Exhibits 7, 8, 9 and 10 were compilations of data which were intended to aid the jury in understanding evidence concerning methamphetamine laboratories which would be presented later in the trial. Although Ariola compiled the charts, at least in part, from hearsay information, the charts were properly admitted into evidence over hearsay objections because the

information was of a type reasonably relied upon by experts in making the type of estimates shown on the charts. *See id.*

■ Additionally, Harold Pike complains that exhibit 7, which purported to represent the "Average Alleged Output Produced by Defendants' Methamphetamine Labs", should have been excluded because, when it was offered, there had not yet been any evidence linking him to any methamphetamine operation. Ariola's testimony was offered to help the jury understand evidence relating to the methamphetamine business, and to help them understand testimony which would be offered later in the trial. Thereafter, numerous witnesses confirmed Harold's participation in the operation of the various methamphetamine laboratories. Any error which may have resulted from a premature admission of exhibit 7 was cured and rendered harmless when the testimony of Harold's participation in the methamphetamine operation was later presented. *See Williams v. State*, 604 S.W.2d 146, 149 (Tex.Cr.App.1980). Harold's points 1 through 6 are overruled.

■ During the guilt-innocence phase of the trial, the State introduced a tape recording of a conversation between Harold Pike and a Fort Worth Police undercover officer. This recording is not a part of the record on appeal. Apparently, the conversation concerned the officer's desire to become involved in the methamphetamine business. According to the State's brief, Harold explained to the undercover officer during the conversation the laws on organized criminal activity, the penalties and the amount of prison time which would have to be served, if convicted of such activity, before becoming eligible for parole.

James argues in point 3 and Harold argues in point 12 that the court erred when it admitted, over objection, the portion of the tape recording of Harold discussing his understanding of the elements of organized criminal activity and the law on parole. They claim that the part of the recording dealing with parole invaded the province of the jury in assessing punishment.

The burden is on the accused, or other party seeking review, to see that a sufficient record is presented on appeal to show error requiring a reversal. Tex.R.App.P. 50(d). Neither the tape nor its transcription was included in the record, and this court cannot determine an abuse of discretion from an incomplete record. James' point 3 and Harold's point 12 are overruled.

■ James complains in point 4 and Harold complains in point 18 that their convictions should be reversed because the court instructed the jury on parole and "good time". *See* Tex. Code Crim.Proc.Ann. art. 37.07(4) (Vernon Supp.1988). Article 37.-07(4), providing for the inclusion of the parole instruction in charges, was recently held unconstitutional by the Court of Criminal Appeals because it violated the separation of powers and the due course of law provisions of the Texas Constitution. *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1988) (on rehearing).

The Court, which characterized the unconstitutional instruction as a "statutory" rather than a "charging" error, determined reversible error by applying the test in Rule 81(b)(2) which provides: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." Tex.R.App.P. 81(b)(2); *see id.* Thus, this court must reverse the Pikes' convictions unless it determines beyond a reasonable doubt that the error resulting from the parole and "good time" instruction being included in the charge did not contribute to their convictions or punishments.

■ An instruction during the punishment phase could not have contributed to either conviction. Furthermore, considering the nature of the offenses, the facts proven, including the overwhelming evidence of their guilt, this court determines beyond a reasonable doubt that instructing the jury under article 37.07(4) did not contribute to the punishments assessed.

James' point 4 and Harold's point 18 are overruled.

■ James alleges in point 6 and Harold Pike contends in point 15 that the charge on guilt-innocence should not have included an instruction on the law of parties. They objected to the instruction because "the law of parties was not pled by the state, and it is not a proper definition or instruction in a conspiracy charge, since a conspiracy is in and of itself a different crime from the law of parties and can be proved without the instruction on the law of parties." The court overruled the objections.

The Pike's argue that the law of parties has no application to the Organized Criminal Activity section of the Penal Code, the section under which both of them were indicted, because that section supplants the law of parties. *See* Tex. Penal Code Ann. § 71.02(a)(5) (Vernon Supp.1988). They also contend the instruction confused and misled the jury in its attempt to apply the law of parties, and failed to specifically apply the law of parties to the facts of the case.

If an error in the charge was the subject of a timely objection, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be "some harm" to the accused from the error. Tex. Code Crim.Proc.Ann. art. 36.19 (Vernon Supp. 1988); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App.1984). If no proper objection was made and the accused must claim that the error was fundamental, then he will obtain a reversal only if the error is so egregious and created such harm that he did not receive a fair trial. *Almanza*, 686 S.W.2d at 171. In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record as a whole. *Id.*

Section 71.02(a)(5) defines organized criminal activity as follows: "(a) A person commits an offense if, with the intent to

establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more of the following: .... (5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance." Tex. Penal Code Ann. § 71.02(a)(5) (Vernon Supp.1988). This section does not expressly supplant the law of parties. However, assuming the law of parties is included within the definition of the offense, charging on the law of parties could not have been harmful because the court would have been charging on an element of the offense.

■ The Pikes also assert that they were harmed because the charge confused the jury by not specifically applying the law of parties to the facts of the case. This objection was not urged at trial, and the Pike's will obtain a reversal only if the error was so egregious that they were denied a fair and impartial trial. *See Almanza,* 686 S.W.2d at 171. A review of the record as a whole does not reveal egregious harm resulting from the instruction, and the Pike's were not denied a fair and impartial trial. James' point 6 and Harold's point 15 are overruled.

■ James Pike complains in point 5 about the following instruction:

> You are further charged that the purpose of a conspiracy to deliver methamphetamine of more that 400 grams may be accomplished by the delivery of more than 400 grams at one time by the conspirators or by the delivery of more than 400 grams in total by the conspirators during the life of the conspiracy. However, to find the Defendants guilty of engaging in Organized Criminal Activity to Deliver Methamphetamine of more than 400 grams it is not necessary that the conspiracy ever achieve its objective. It is only necessary that the object of the conspiracy was the delivery of over 400 grams of Methamphetamine and that acting in a combination of five or more with the intent to share in the profits of such activity an overt act was done by one of the members of the combination for the purpose of accomplishing the objects of the conspiracy.

He contends the instruction resulted in fundamental error because it commented on the weight of the evidence, incorrectly defined the law, and expanded the available theories for conviction beyond those alleged in the indictment.

Applying the rules in *Almanza,* James must show egregious harm from the instruction because he failed to object. He must show that he was denied a fair and impartial trial before he can obtain a reversal. *See id.* No such harm is presented and James' point 5 is overruled.

■ Harold Pike objected to the charge because he claimed it did not require the State to prove every allegation in the indictment. He contends in point 14 that the court erred when it overruled his objection.

The indictments alleged the conspiracy, and further charged that, "in furtherance thereof, the said [Harold Pike] *performed overt acts* as follows." (Emphasis added). Each indictment then specified over 40 overt acts alleged to have been committed for the purpose of carrying out the agreement to manufacture and deliver methamphetamine. However, the court instructed the jury that it should find Harold guilty:

> [I]f you find and believe from the evidence beyond a reasonable doubt that ... [Harold Pike] did ... intentionally or knowingly, with the intent to establish, maintain, or participate in a combination, and in the profits of a combination, conspire to commit the offense of unlawful manufacture of a controlled substance, to-wit: Methamphetamine ... and in pursuance of said agreement, in the furtherance therof the said [Harold Pike] ... did perform *one or more of the overt acts* as set out below.

(Emphasis added). The acts listed in the indictment were then repeated in the charge.

Harold argues that the State was required to prove each and every overt act included in the indictment, and that instructing the jury that it need only find "one or more of the overt acts" relaxed the State's burden of proof. The indictments charged that Harold engaged in organized

criminal activity by *conspiring to commit* the aggravated manufacture and aggravated delivery of methamphetamine of over 400 grams. *See* Tex. Penal Code Ann. § 71.02(a)(5) (Vernon Supp.1988). The charge instructed the jury that, if a conspiracy was established, the State must then prove that Harold performed one or more of the overt acts in furtherance of the conspiracy.

"Conspires to commit" means that "a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform *an overt act* in pursuance of the agreement." Tex. Penal Code Ann. § 71.01(b) (Vernon Supp.1988). The court's charge was proper because it required the jury to find that Harold Pike had performed "one or more" overt acts. His point 14 is overruled.

■ Harold alleges in point 13 that the court erred when in denied his motion for an instructed verdict. He alleges there was a fatal variance between the indictment's allegation of delivery "to a person or persons unknown to the Grand Jury" and the proof at trial. He contends the State failed to prove that the grand jury did not know, and through reasonable diligence could not have known, to whom the deliveries were made. Furthermore, he argues that the grand jury did know, or through the exercise of reasonable diligence could have known, the identities of Becky and Renee because pictures which led to their identification were seized in a search of the premises where he was arrested.

When an indictment alleges that "persons" are "unknown to the Grand Jury," the state must prove the grand jury did not know, and through reasonable diligence could not have known, who the "persons" were. Harold relies on *Edlund v. State*, 677 S.W.2d 204 (Tex.App.—Houston [1st Dist] 1984, no pet.), and *McIver v. State*, 555 S.W.2d 755 (Tex.Cr.App.1977), to support his assertion that the State's failure of proof constituted reversible error. In each of these cases on which he relies, the de-

fendant was charged with murder, and the indictments alleged that the weapon or means of committing murder was unknown to the grand jury. In both cases, the state was required to prove that the grand jury, after efforts to do so, was unable to find the exact weapon or means used in the commission of the offense. Without such proof, a reversal was required. *Id.*

Harold's cases are distinguishable. In *Kennard v. State*, 649 S.W.2d 752, 769 (Tex.App.—Fort Worth 1983, pet. ref'd), a case involving a conspiracy to deliver heroin to persons unknown to the grand jury, the court held that *McIver* and similar decisions dealt with situations analogous to an offense of delivery, rather than an agreement to deliver. *Id.*

Here, the offense charged in the indictment is the *agreement* to deliver methamphetamine, rather than the deliveries themselves. Although the indictment alleged specific deliveries of methamphetamine to named persons, these allegations were listed as overt acts performed in furtherance of the *agreement*. There is nothing in the record to show that the grand jury knew, or through the exercise of reasonable diligence could have discovered, every person to whom the combination *agreed* to deliver. That the grand jury might have known or discovered to whom some deliveries were made is immaterial to the agreement. *Id.* No variance existed between the indictment and the proof at trial, and Harold's point 13 is overruled.

■ James Pike contends in point 7 that the court fundamentally erred when it permitted John Sheperd, a co-conspirator, to claim the Fifth Amendment privilege against self-incrimination after Sheperd had testified against him. Sheperd plead guilty to the same indictments under which the Pikes were tried, and agreed to testify against them in return for a 20-year sentence. He testified about his participation in the methamphetamine operation and his association with Harold Pike. On cross-examination, Sheperd was allowed to invoke his Fifth Amendment privilege when he was asked about his previous involvement with the manufacture of controlled sub-

stances, the existence of his own drug organization, and his involvement with heroin in a situation where a man died. James did not object to him invoking his privilege against self-incrimination.

None of the questions that Sheperd refused to answer related to the offense charged, but rather concerned collateral matters which were not relevant to the case. Furthermore, Sheperd's Fifth Amendment claim with respect to collateral matters, none of which related to the offense charged against James Pike, could not have harmed James. Finally, James does not cite any authority to support his contention that fundamental error resulted from Sheperd's invocation of the Fifth Amendment privilege. His point 7 is overruled.

The convictions of Harold Pike and James Pike are affirmed.