Clarence MACK, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–88–00404–CR to 05–88–00406–CR.

Court of Appeals of Texas,
Dallas.

April 24, 1989.

---

Michael D. Curran, McKinney, for appellant.

Tom O'Connell, J. Bryan Clayton, Mary A. Scanlon, McKinney, for appellee.

Before McCLUNG, BAKER and KINKEADE, JJ.

McCLUNG, Justice.

Appellant, Clarence William Mack, was charged in separate indictments with the offenses of aggravated robbery, murder, and conspiracy to commit capital murder. The three offenses arose from the same transaction and were consolidated into one trial. The cases have also been consolidated on appeal. The jury returned a verdict of guilty for each offense and sentenced appellant to fifty years for aggravated robbery, ninety-nine years for murder, and sixty-years for conspiracy to commit capital murder. His complaints are: (1) the evidence was insufficient to support the conviction for conspiracy; (2) the State failed to corroborate appellant's extrajudicial con-

fession when proving the existence of the conspiracy; (3) because all the offenses stemmed from the same transaction, appellant was subjected to multiple punishments for the same offense; (4) the State was allowed to introduce testimony regarding an unadjudicated extraneous offense; (5) during the punishment phase, the prosecutor compared appellant to several infamous criminals; (6) the State was allowed to elicit a co-conspirator's statement which was made after the conspiracy, if any, was completed; (7) the State failed to establish that the Grand Jury did not know or, through diligence, could not have known the exact weapon used to commit the offense; and (8) although the State alleged that the murder weapon used was a metal pole, there was no evidence adduced as to the use of a metal pole.

We reverse the conviction for the offense of conspiracy to commit capital murder. The convictions for aggravated robbery and murder are affirmed.

On Thanksgiving Day of 1987, Seberino Tijerina, an elderly Mexican gentlemen, was repairing the fence posts on some property he owned. Appellant, Clarence Mack and a friend, Willie Hayes, walked by on their way to visit another friend, Charles Johnson, when they noticed Tijerina working. After arriving at Johnson's house, the three agreed to rob Tijerina. On the way to the field where Tijerina was working, Johnson picked up a stick, Hayes a baseball bat, and Mack a baseball-sized rock. While Tijerina was working, Johnson ran up and hit Tijerina in the head with the stick. The two men began fighting when Mack joined in by throwing a rock which missed hitting Tijerina. Tijerina then pulled out a knife and approached Mack who hit Tijerina in the mouth. Tijerina ultimately fled and took refuge in a nearby shed. He attempted to bar the door but was unsuccessful. The three attackers found a metal pole and Johnson began beating Tijerina on the head. Hayes also hit Tijerina's legs with a post-hole digger while Mack kicked him. After Tijerina was subdued Mack took Tijerina's wallet and the keys to his truck. Leaving Tijerina unconscious in the shed, the three men drove away in the victim's truck. Later that night, the men sold the truck's radio and speakers to an acquaintance. Around midnight of the same day, Mack and Johnson returned to the shed and, upon looking inside, they saw Tijerina's fingers move and realized that he was still alive. Becoming frightened, they left. Tijerina's blood-crusted, lifeless body was discovered in the shed on November 27, 1987, one day later. During the course of their murder investigation, police received information linking Mack, Johnson, and Hayes to the crime.

One of Mack's indictments was for conspiring with Hayes and Johnson to commit capital murder. There were no independent eyewitnesses to the acts alleged in the indictment. Neither Mack nor any of the alleged co-conspirators testified during the guilt-innocence phase of the trial. Thus, the only evidence the State used to establish conspiracy was contained in an extrajudicial statement that Mack made following his arrest. The pertinent portions are as follows:

> [Hayes] called [Johnson] in the kitchen and was talking to him. [Johnson] came out of the kitchen and asked me if there was really a Mexican over there. I told him that there was. [Johnson] got his coat and we started walking. [Johnson] kept saying, 'Do you want to hit him?' This meant rob. [Johnson] picked up a stick that was broken off of a log on the railroad. He said if you don't do nothing you are not going to get anything. I picked up a rock. I don't know what [Hayes] picked up. We walked over a bridge and down the railroad tracks past the Mexican. He was still working on the fence post. We walked over to the other side of his truck. The truck was blue and gray and had a camper on it. The Mexican bent over and Charles ran up and hit him twice in the head. The man staggered but did not fall down. He stood up and yelled something in Spanish. He started fighting with [Johnson]. I threw a rock at him but missed him.

Section 15.02 of the Texas Penal Code provides that a person is guilty of

conspiracy if, with intent to commit a felony, he agrees with another to engage in the offense and one of the conspirators performs an overt act in furtherance of the agreement. The corpus delicti in a prosecution for murder consists of a dead victim who met his demise because of the criminal act of another. *See Valore v. State*, 545 S.W.2d 477, 479 (Tex.Crim.App.1977). However, where the charge is conspiracy to murder, the corpus delicti is different. This is because the focus of our conspiracy law concerns the increased danger presented to society when groups agree to engage in criminal conduct. Searcy & Patterson, *Practice Commentary*, TEX.PENAL CODE ANN § 15.02 (Vernon 1974). The corpus delicti of a conspiracy is the *agreement* to commit the crime. *Brown v. State*, 576 S.W.2d 36, 43 (Tex.Crim.App. 1979).

■ A statement or confession, without more, is insufficient to support a conviction for conspiracy. The admission must be corroborated. *Smith v. State*, 363 S.W.2d 277, 279 (Tex.Crim.App.1963). In this case, there was no showing, even in the statement, that there was an agreement to commit murder. The State claims that the statement was corroborated both by Mack's testimony at trial and by his admissions to a third party. However, Mack did testify at the punishment phase of the trial. Throughout his testimony during the punishment phase, Mack insisted that the only agreement made was to rob the victim. The statement to a third party referenced by the State, was Mack's admission that he did hit Tijerina on the head, and that later when he and Johnson returned to the shed, Tijerina was still alive. Mack also told the third party that, in the future, he was not going to commit any crimes with Johnson because he "does all the work and [Johnson] doesn't do anything." Such statements, however, do not establish an agreement to commit murder. Therefore, the conspiracy conviction cannot stand.

Appellant next argues that he was subjected to multiple punishments for the same offense. He premises this argument on the fact that the murder, aggravated robbery, and alleged conspiracy all derived from the same transaction. Because of our reversal on the conspiracy count, we will respond to this point of error only as it appears to relate to the robbery and murder charges.

■ Aggravated robbery and murder are separate offenses. Conviction of each requires proof of an additional fact which the other does not. *Compare* TEX.PENAL CODE ANN. § 29.03 (Vernon 1974) *with* § 19.02 (Vernon 1989). Thus, although the offenses occurred on the same day, as part of the same transaction, and involved the same victim, there was no violation of the double jeopardy clause. *See Ex parte Mike*, 632 S.W.2d 594, 595 (Tex.Crim.App.1982).

■ Mack also complains that the State was allowed to introduce evidence concerning an extraneous offense which he committed. Mack testified during the penalty phase of the trial and stated that he had never committed a felony offense. Upon cross-examination, Mack testified without objection, as follows:

Q. Okay. Well now, have you beaten up anybody since you've been over at the Collin County Jail?

A. I got into some fights.

Q. Now, have you beaten up anybody since you've been at the Collin County Jail?

A. Have I beaten up anyone?

Q. Yes, sir.

A. No, they came out about even.

Q. Sir?

A. They came out about even.

Q. Then you're saying you didn't beat up anybody at the jail while you've been over there waiting for your trial?

A. I said they came out about even. It was a tie.

Q. It was an even fight in your mind?

A. Yes.

Subsequently, the State questioned a Collin County Sheriff's Deputy who testified that, while confined at the Collin County jail, appellant had an altercation with another prisoner. As a result, the other prisoner

received first aid treatment. Appellant's counsel made a timely objection to the testimony on the grounds that it was irrelevant. However, the jury had already heard about the altercation from appellant. Additionally, without objection, the State referenced the jail scuffle in its closing argument. Appellant's failure to timely object waived any error. *See May v. State*, 738 S.W.2d 261, 272 (Tex.Crim.App.), *cert. denied,* ── U.S. ──, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987); *Carr v. State*, 726 S.W.2d 608, 610–12 (Houston [14th Dist.] 1987, pet. ref'd); TEX.R.APP.P. 52(a).

 Mack next argues that the trial court allowed the State to compare him to several infamous criminals. During the penalty phase, one of Mack's witnesses, an adult probation officer, testified at length concerning the requirements and conditions which attach to parole. The following exchange between the witness and the prosecutor took place during the cross-examination:

Q. So we understand the law, anybody's eligible for probation until they have been convicted, is that right?

A. Yes, that's my understanding.

Q. I mean Adolph Hitler, Jack the Ripper, Charles Manson, any of those people their first trip in Court would be eligible for probation?

MR. MORGAN: I object Your Honor. That is totally inflammatory. Side bar comments. Speaking of specific instances not in the record.

THE COURT: Overrule your objection. I let you go into the parameters of probation. I'll let Mr. Schultz do the same.

Q. [PROSECUTOR] I'm saying we assume we were trying Adolph Hitler in Texas for some kinds of crime. Apparently he'd never before been convicted of any Texas or United State's crime, so he'd be eligible?

A. That's my understanding.

Q. If someone's lawyer were up there saying, "Mr. Hitler got probation," he could be visited at his place of work once a month, and all the other questions you were asked, isn't that true?

A. That's true.

To preserve error, the objection on appeal must comport with the objection made at trial. Mack's objection at trial was that the prosecutor's question was inflammatory, constituted a side bar remark, and related to situations not in the record. The objection on appeal is that the State was allowed to compare appellant to infamous criminals which, in turn, produced testimony whose probative value was outweighed by its prejudicial effect. Since Mack's trial objection varies from the objection on appeal, the issue is not properly before our Court. *Cravens v. State*, 687 S.W.2d 748, 752 (Tex.Crim.App.1985).

Assuming, without deciding, that this error was preserved, we are not persuaded that this was an attempt by the State to compare appellant to the above mentioned infamous criminals. Taken in context, the State was attempting to expound on the parameters of probation and to put before the jury his theory that probation may not be appropriate for all crimes or for all criminals.

 We next address the complaint that the State was allowed to elicit a statement of a co-conspirator which was made after the conspiracy was complete. The State questioned a witness who testified that either Mack or Charles Johnson said the truck, which was really Tijerina's, belonged to an uncle. A statement is not hearsay if it is offered against a party and was made by a co-conspirator during the course of and in furtherance of the conspiracy. TEX.R.CRIM.EVID. 801(e)(2)(E). Because we have held the State failed to properly prove the existence of a conspiracy, the statement, if made by Johnson, was hearsay.[1] However, we conclude that statement did not harm appellant as there was

---

1. The witness was not certain which of the two men made the statement. The trial court allowed the statement to come into evidence based on the State's promise that it would estab-

lish the existence of the conspiracy. If the statement was made by appellant, it would constitute his own admission and would not, therefore, be hearsay. TEX.R.CRIM.EVID. 801(e)(2)(A).

overwhelming evidence to support both the remaining charges for murder and for aggravated robbery. Therefore, we determine beyond a reasonable doubt the error did not contribute to the conviction or punishment. TEX.R.APP.P. 81(b)(2).

Appellant contends that the evidence was insufficient to support paragraphs 2 and 4 of the indictment in which the Grand Jury alleged that it could not determine the exact weapon or means used to commit to the offense. Paragraphs 2 and 4 of the indictment charge that the appellant struck "Sebriano Tijerina on the head with a deadly weapon, namely: an object unknown to the Grand Jury, that in the manner and means of its use and intended use is capable of causing death and serious bodily injury." Appellant's argument is that because, at trial, the State produced evidence that a metal pole may have been the cause of death, the Grand Jury could have alleged the exact instrument which caused Tijerina's death.

When an indictment alleges that the manner and means used to commit a crime are unknown to the grand jury, the State must prove that the grand jury attempted to determine the exact weapon or means used in the offense, but was unable to do so. *See Pike v. State*, 758 S.W.2d 357, 367 (Tex.App.—Waco 1988, no pet.). This must be proven just as any other allegation in the indictment. *Edlund v. State*, 677 S.W.2d 204, 209 (Tex.App.—Houston [1st Dist.] 1984, no pet.).

By way of proof, the State called the vice foreman of the grand jury who testified that the members received testimony, viewed photographs, and considered documentary evidence, but were still unable to determine the exact instrument used to kill Mr. Tijerina. She also stated she felt the grand jury had exercised reasonable diligence in these efforts. Appellant's counsel declined to cross-examine this witness and made no objections to the testimony.

Additionally, the medical examiner testified that death resulted from an impact to the head, and this injury would be consistent with a blow from a blunt object. He also stated that determining what inflicts a particular injury can not always be ascertained with certainty. The head injury could have been caused by being hit with a long, linear, heavy object such as a steel pipe, a metal pole, or a baseball bat. The examiner stated that he had no quarrel with the grand jury's inability to determine the exact cause of death. We hold that this evidence was sufficient to support the allegation that the exact description of the weapon was unknown to the grand jury.

Lastly, Mack argues that there was insufficient evidence to support paragraphs 1 and 3 of the indictment because there was no evidence in the record that a metal pole caused Tijerina's death. We disagree. Although the testimony concerning the metallic object used to hit Tijerina was variously described as a post and a pipe, it was also called a pole.

The conviction for conspiracy to commit capital murder is reversed. The convictions for aggravated robbery and murder are affirmed.