**STATE of Tennessee, Appellee,**

v.

**Lloyd Anthony LONG, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 13, 1990.

Permission to Appeal Denied by Supreme Court Nov. 19, 1990.

Vance L. Baker, Jr., Athens, for appellant.

Charles W. Burson, Atty. Gen., Amy L. Tarkington, Asst. Atty. Gen., Nashville, Jerry N. Estes, Dist. Atty. Gen., William Reedy, Asst. Dist. Atty. Gen., Athens, for appellee.

OPINION

SCOTT, Judge.

The appellant was convicted of conspiracy to sell over thirty grams of cocaine, for which he received a sentence of eight years in the state penitentiary as a Range I, standard offender, and a $500.00 fine. He was also convicted of selling marijuana, for which he received a concurrent sentence of eleven months and twenty-nine days in the county jail.

On appeal he has presented three issues. In the first he challenges the sufficiency of the convicting evidence, contending that the state failed to prove the existence of a conspiracy to sell cocaine because there was no evidence that any cocaine supplier even existed. Furthermore, he contends that there is no evidence of an agreement to sell cocaine, but that he was, at most, a "facilitator" helping a willing buyer locate a seller.

On January 3, 1989, at about 2:00 P.M., Dana Mashburn, an undercover member of the Tenth Judicial District Drug Task Force, met with Paul DeWolfe and Debra Knox at Mr. DeWolfe's apartment about the possibility of purchasing marijuana. Two hours later she returned to the apartment with $70.00 and at that time the appellant was present. She purchased the marijuana from the appellant, who gave her a bag of marijuana in exchange for the money.

At that time she also asked about the possibility of buying cocaine, stating that she wanted an ounce. The appellant told her that he could get it for her.

Three days later Ms. Mashburn met with Mr. DeWolfe and the appellant at Ms. Knox's apartment. Accompanying Ms. Mashburn was Phillip Craig Masters, a member of the Tennessee Highway Patrol, who was working as an undercover drug agent. The appellant and Mr. DeWolfe told Ms. Mashburn that they did not have the cocaine, that they would have to go to Cleveland, Tennessee to get it and they wanted the purchase price of $1,800.00 in advance. They were unsuccessful in getting Ms. Mashburn and Mr. Masters to give them the money in advance. Mr. Masters suggested that he would go to Cleveland with them and that Mr. DeWolfe could stay with him while the appellant went to get the cocaine. Mr. Masters then followed the appellant and Mr. DeWolfe to Cleveland in his own car. They met at a Hardee's Restaurant where they haggled over the amount of money that Mr. Masters would give the appellant to go buy the cocaine. Finally, they settled on the sum of $1,000.00 and Mr. Masters gave the appellant ten one hundred dollar bills, with which to buy an ounce of cocaine. Mr. Masters and Mr. DeWolfe waited and waited for the appellant's return. An hour later, when he had not returned, Mr. Masters arrested Mr. DeWolfe and then set out to find the appellant. He found him at the home of Shelia Blankenship, the appellant's sister-in-law, hiding in a closet. The one thousand dollars was found in the appellant's front pocket. No cocaine was ever found and there was no proof that any cocaine dealer was contacted or involved in any way.

The appellant testified and admitted obtaining the marijuana for Ms. Mashburn. However, he also testified that he never had any cocaine nor did he know where to get any. The proposed purchase and delivery of cocaine was simply a ruse by which the appellant intended to take Ms. Mashburn's money, which he intended to eventually split with Mr. DeWolfe.

Based upon this controverted proof, the jury found the appellant guilty of conspiracy to sell more than thirty grams of cocaine and sale of marijuana.

A jury verdict of guilty, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in favor of the theory of the state. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978). On appeal the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

There was absolutely overwhelming evidence from which any rational trier of fact would conclude that the appellant was guilty of selling the marijuana beyond a reasonable doubt. Rule 13(e), T.R.A.P., *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2786–2792, 61 L.Ed.2d 560 (1979). Indeed, the appellant admitted that offense in his testimony. However, the more serious problem is whether one can be convicted of conspiracy to sell drugs in which no drugs are delivered or even shown to have ever existed. There is no proof that the appellant was ever a cocaine dealer or that he

had cocaine in his possession at any time. This is a novel question, and, as best we can determine, a case of first impression in Tennessee.

A conspiracy is defined as two or more persons conspiring to commit an indictable offense. T.C.A. § 39–1–601(1). Except for certain enumerated felonies, an overt act to effect the object of the conspiracy is required. T.C.A. § 39–1–602.

 Conspiracy is a partnership in crime. It is an attempt to commit an offense and it is not necessary that the object of the conspiracy be attained. The unlawful confederation may be established by circumstantial evidence and by the conduct of the parties in the execution of the criminal enterprise. *State v. Cook*, 749 S.W.2d 42, 44–45 (Tenn.Crim.App.1987).

No case has been found in any jurisdiction where the facts are precisely on all fours. Other similar cases are instructive. In *United State v. Cepeda*, 768 F.2d 1515, 1517 (2d Cir.1985), the court reversed a conviction for conspiracy to distribute cocaine. There the court noted that "there was not even evidence of a sale." The court refused to infer that the defendant intended to enter into a conspiracy from her presence or even from her possession of .36 grams of cocaine, $1,151.00 and drug-cutting paraphernalia with cocaine residue thereon. In *United v. Soto*, 716 F.2d 989, 991–992 (2d Cir.1983), the court noted that residence at an apartment occupied by several other persons and used as a drug "cutting mill," even coupled with knowledge that a crime was being committed, was insufficient evidence to sustain a conspiracy conviction.

In *Mack v. State*, 772 S.W.2d 162, 165 (Tex.App.1989), the defendant was convicted of conspiracy to commit capital murder. The court noted that the *corpus delecti* of a conspiracy is the agreement to commit the crime, and there was an agreement to rob the victims. However, there was no evidence of an agreement to commit murder and the court held the "conspiracy conviction cannot stand."

A somewhat similar case is *Commonwealth v. Themelis*, 22 Mass.App. 754, 498 N.E.2d 136, 138 (1986). In that case the defendant was convicted of conspiracy to commit murder and to being an accessory to another crime. His co-conspirator testified to the details of the murder agreement and all of the preparations for the killing, but claimed at trial that "his undisclosed purpose was to obtain money from the defendant by means of his feigned agreement to the murder scheme." According to the co-conspirator, he was engaged throughout only in "ripping off" the defendant. The court had no difficulty finding from all of the other facts and circumstances that the appellant and his co-defendant were preparing to kill the intended victim. *Id.*, 498 N.E.2d at 140.

Not one of these cases is precisely on point. The closest case to this situation factually is *Cepeda*, where there was no evidence of a sale. In this case, not only was there no evidence of a sale, there is not even evidence that there ever was any cocaine available to sell.

Judge Learned Hand referred to conspiracy as "that darling of the modern prosecutor's nursery." *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir.1925). Justice Jackson in a concurring opinion in *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 719–720, 93 L.Ed. 790 (1949), noted that "loose practice as to (conspiracy) constitutes a serious threat to fairness in our administration of justice."

 It is clear that the appellant was guilty of some offense, perhaps larceny or obtaining money under false pretenses. However, there is no proof that there was a conspiracy between the appellant and Mr. DeWolfe to deliver more than 30 grams of cocaine as charged in the first count of the indictment. Therefore, the conviction for that offense is reversed and dismissed.

In the second issue the appellant contends that the trial judge erred by failing to charge the lesser included offenses of conspiracy to deliver less than thirty grams of cocaine and attempt to commit a felony. By our action of the first issue, the consideration of this issue is unnecessary.

In the final issue the appellant contends that the trial judge erred by allowing the state toxicologist to identify the marijuana when it was not properly introduced as evidence or identified by the witness who purchased it. In other words, he contends that the "chain of custody" was not established.

Actually, he complains because the marijuana was offered as evidence through the testimony of the toxicologist rather than through the testimony of Ms. Mashburn.

Ms. Mashburn testified that she delivered the marijuana that she purchased from the appellant to Bill Matthews, a detective. Mr. Matthews testified and identified the package of marijuana by his initials which were on the package. David Brown, the toxicologist, testified that he received the package of marijuana from Mr. Matthews. The package of marijuana was actually introduced during the testimony of Mr. Matthews. Through those three witnesses the chain of custody of the package of marijuana was clearly established, and this issue has no merit.

The conviction for the sale of marijuana is affirmed. The conviction for conspiracy to sell cocaine is reversed and dismissed.

BYERS, J., and WILLIAM M. DENDER, Special Judge, concur.