Opinion issued November 21, 2002










     






In The
Court of Appeals
For The
First District of Texas




NOS. 01-01-00991-CR
          01-01-00992-CR




JUAN LUIS GUTIERREZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause Nos. 849473 & 873088




O P I N I O N

          A jury convicted appellant, Juan Luis Gutierrez, of murder and aggravated
robbery, found the enhancement allegation in the indictment of each case true, and
assessed punishment at confinement for 99 years in the murder case and 60 years in
the aggravated robbery case. On appeal, appellant contends (1) the evidence was
legally insufficient to convict him of either offense because the accomplice witness
testimony offered by the State was not corroborated, (2) the evidence was legally and
factually insufficient to convict him as a party to either offense because the State
failed to prove the guilt of another person as the primary actor, (3) he received
ineffective assistance of counsel, and (4) the convictions violated his state and federal
protections against double jeopardy. We affirm.
Background
          The jury charge in this case named Pete Castillo and Francisco Martinez as
accomplice witnesses. Both men testified against appellant at trial. The relevant
evidence, viewed in the light most favorable to the verdict, was as follows:
1. Accomplice Witness Testimony
          A. Pete Castillo
          Castillo testified that Raul Cardenas told him that appellant had a job for them. 
Appellant, Castillo, Cardenas, Francisco Martinez, and Jose Zavala met at Castillo’s
house to plan a robbery. Appellant told them that he knew some guys that wanted to
buy cocaine and said that the job would be easy because Joe Tijerina, the proposed
victim, trusted appellant. Appellant’s plan was to take a kilogram of fake cocaine and 
try to and exchange it with the Tijerina for $16,000. While planning the exchange,
appellant saw that Zavala had a .357 handgun and Cardenas had a .40 caliber
handgun. If Tijerina realized the cocaine was fake, appellant instructed his
coconspirators to take the money at gunpoint. Appellant did not plan to go with the
others to make the exchange. While they were planning the robbery, Castillo noticed
appellant using a cell phone but could not hear what was being said. 
          Before the planned exchange, appellant took the other men over to Tijerina’s
house so they would know where to deliver the fake cocaine. No one got out of the
car the first time they drove to Tijerina’s house. 
          The five men then went back to Castillo’s garage to wait while appellant made
contact with Tijerina. After several hours, appellant made a phone call and then told
the four other men to “get ready and go over there.” Castillo drove one car,
accompanied by Cardenas, Martinez, and Zavala. Appellant followed in another car,
which was driven by Cardenas’s brother. 
          Once the men arrived at Tijerina’s house, Zavala and Martinez got out of the
car, and Tijerina came outside to meet them. They spoke to Tijerina on the porch for
about two minutes, and then left. Zavala told the other men that he “wasn’t going to
do it,” because he knew Tijerina. However, appellant called and the men decided to
go ahead with the plan.
          About an hour later, the men returned to Tijerina’s house. This time Cardenas
and Martinez got out, and Zavala remained in the car with Castillo. Appellant was
still driving around in another car and communicating with the four men by cell
phone. Cardenas and Martinez followed Tijerina in the house, and Castillo heard
gunshots a few seconds later. As he began to speed away, Castillo saw Martinez
running toward the car, still carrying his gun. Cardenas fell on the front porch and
dropped his gun, but kept running toward the car. After Martinez and Cardenas got
in the car, Castillo sped away.
          Appellant followed Castillo back to Castillo’s grandmother’s house. He told
Martinez to hide the car and then asked the men, “[D]id you all get anything?” When
he found out the men did not get any money, appellant was upset. 
          Appellant and Zavala then went back to Tijerina’s house to try and retrieve
Cardenas’s gun, but the house was surrounded by police.
          The men were arrested four months later.
          B. Francisco Martinez 
          Martinez’s testimony about the planning of the robbery was very similar to
Castillo’s testimony. He, too, testified that the four men met at Castillo’s to plan the
robbery and that appellant said the job would be easy because Tijerina was a good
friend of appellant’s and would trust him. Cardenas further explained that appellant
thought Tijerina would be easy to rob “because once we pulled out the guns on
[Tijerina], he would get scared and give up the money quickly, because he had been
shot recently, about six months before the incident.”
          Martinez also testified that all five men drove by Tijerina’s house so that
appellant could show them where Tijerina lived. The men then went back to
Castillo’s and waited for appellant to contact Tijerina, which he did about three hours
later. After that telephone call, appellant told the four men to “go over there.” 
Castillo drove and appellant followed in another car with Cardenas’s brother.
          Martinez and Zavala got out and spoke with Tijerina, but left because he did
not yet have the money. When they got back in the car, Zavala indicated that he
wanted to back out because he knew Tijerina, and all the men “agreed that it was a
sign . . . not to go back.” However, appellant called and the men agreed to go forward
with the plan.
          The men returned to Tijerina’s house and appellant, again, followed in another
car. Martinez and Cardenas got out. After speaking with Tijerina, Martinez got the
fake cocaine out of the car and the two men followed Tijerina inside. Martinez
testified that he saw four other men that he did not know sitting on the couches in the
house. Cardenas told Tijerina to “show him the money,” and Tijerina responded to
“show him the dope first.” Then Cardenas shot Tijerina and the two men fled to the
car Castillo had waiting. Cardenas tripped on the way out and dropped his gun. 
          Appellant followed the men back to Castillo’s, where appellant asked them if
they had gotten any money. When they told him they had not, appellant was shocked. 
Appellant was not upset that Tijerina had been shot, but he was surprised. Appellant
told Martinez to hide his car. Martinez believed that appellant and Cardenas’s
brother went back to the crime scene to try and retrieve Cardenas’s gun.
2. Non-Accomplice Witness Evidence
          A. Larry Hernandez
          Larry Hernandez testified that, on the day of the shooting, he and David Garza
went over to Tijerina’s house because the men were planning to go out to dinner with
some girls. Hernandez became impatient because he was ready to leave, but Tijerina
was waiting for a telephone call. Tijerina spoke to someone named “Guero” on his
cell phone, and, approximately 20 minutes later, two men came over to the house and
talked to Tijerina on the porch. After less than two minutes, the men left.
          Michael Chavarria then came over to the house carrying a blue bag. Tijerina
then got another telephone call, after which he stated “Guero” is not coming. Shortly
thereafter, the two men that had been with Tijerina on the porch returned. Within
minutes, Hernandez saw the first man, later identified as Cardenas, demand money
and then shoot Tijerina. Hernandez said the men then started shooting towards him. 
Hernandez was hit twice, once in the back and once in the leg. Michael Chavarria
was also shot, but David Garza was not. Chavarria ran out the front door and David
Garza called an ambulance.
          B. David Garza
          Garza testified that he, Larry Hernandez, and Tijerina had plans to go to dinner,
so they met at Tijerina’s brother’s house. While they were waiting, Tijerina was
talking on the cell phone and making a lot of calls. Garza did not know who Tijerina
was talking to, but he knew Tijerina was waiting for someone by the name of
“Guero.”
          Mike [Chavarria] arrived while Tijerina was talking on the phone. Shortly after
Chavarria arrived, two men came to the house. While these men were talking to
Tijerina, one of them pulled a gun and began shooting. Garza ran toward the back of
the house and was not hit by any of the bullets. Garza ultimately called 911 from
Tijerina’s cell phone. Garza found a gun on the sidewalk, picked it up with his
sleeve, and put it in a trash can. When the police got to the scene, he showed them
the gun.
          C. Cell Phone Records
          Jordan Kurtz, a law enforcement relations specialist for Voicestream Wireless,
testified that Voicestream records showed that on January 29, 2000, 18 calls were
made from Maria Alicia Lugo’s cell phone to Veronica Gutierrez’s cell phone. Lugo
is Tijerina’s grandmother and Gutierrez is appellant’s wife. Tijerina’s father testified
that Tijerina was using his grandmother’s cell phone on the day of the offense.
          D. Appellant’s Nickname
          Houston Police Officer Hernandez identified appellant in court and testified
that he knew appellant went by the nickname, “Guera.”
          Accomplice Witness Testimony Corroboration
          In points of error one and two, appellant contends the evidence was legally
insufficient to convict him of either offense because the State failed to sufficiently
corroborate the testimony of the accomplice witnesses.



          We determine whether any accomplice testimony requiring corroboration has
in fact been corroborated by eliminating from consideration the accomplice testimony
and then examining the remaining inculpatory evidence to ascertain whether the
remaining evidence tends to connect the defendant with the offense. See McDuff v.
State, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). The non-accomplice evidence
need not be sufficient, in itself, to support a conviction, and the accomplice witness
rule is not governed by federal or state constitutional standards. Vasquez v. State, 67
S.W.3d 229, 236 (Tex. Crim. App. 2002).
          Here, the telephone calls from Tijerina to appellant on the day of the murder
tend to connect appellant to the offense. Larry Hernandez testified that while he was
waiting for Joe Tijerina, Tijerina was on the telephone with someone, and that when
he hung up, Tijerina said “Guero is not coming.” Houston Police Officer Hernandez
testified that Appellant was known as “Guero.” David Garza testified that he was
waiting with Hernandez, while Tijerina talked with someone on the phone. Garza
knew that Tijerina was waiting for someone named “Guero.” Tijerina was using a
telephone registered to his grandmother, Maria Alicio Lugo, on the day he was
murdered. Telephone records showed that over 14 calls were made from the
telephone Tijerina was using to a telephone registered to Veronica Gutierrez,
appellant’s wife.
          Thus, we conclude that the requirements of the accomplice witness rule were
satisfied in this case. Accordingly, we overrule points of error one and two.
Proof of Guilt of the Principal
          The jury charge authorized appellant’s conviction as a party to the robbery and
murder of Tijerina. In points of error three through six, appellant contends the
evidence was legally and factually insufficient to convict him of either offense as a
party because the State did not prove the guilt of another person as the primary actor
in the offense. We follow the usual standard of review for determining the
sufficiency of the evidence. See Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim.
App. 2000) (legal sufficiency); King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App.
2000) (factual sufficiency).
          Appellant points out that, as of the time of this trial, none of the other
accomplices had been convicted and sentenced for their participation in the offenses.



Appellant’s argument is without merit. To convict a defendant as a party, the State
must prove conduct that constitutes an offense combined with an act by the defendant
committed with the intent to promote or assist such conduct. Beier v. State, 687
S.W.2d 2, 3 (Tex. Crim. App. 1985). In a prosecution as a party, it is no defense “that
the person for whose conduct the actor is criminally responsible has been acquitted,
has not been prosecuted or convicted, has been convicted of a different offense or of
a different type or class or offense, or is immune from prosecution.” Tex. Code
Crim. Proc. Ann. art. 7.03(2) (Vernon 1994).
          Under article 7.03, the fact Cardenas and Martinez had not been sentenced as
of the date of appellant’s trial, and that Castillo was never charged, is irrelevant. 
There was sufficient proof in the record that Cardenas shot Tijerina during a botched
robbery, and that appellant assisted Cardenas by planning the fake cocaine deal
giving rise to the robbery, driving with Cardenas and the others to show them where
Tijerina lived, and then going back to the murder scene to try and retrieve the gun
Cardenas dropped during the incident.
          Thus, we hold the evidence is legally and factually sufficient to show that
appellant solicited, encouraged, directed, or aided Cardenas in committing the
offenses of aggravated robbery and murder.
          Accordingly, we overrule points of error three through six.
Ineffective Assistance of Counsel
          In point of error seven, appellant contends his counsel was ineffective for
failing to object to seven instances of the admission of hearsay evidence. To
determine if a defendant has been denied effective assistance of counsel, we follow
the standard set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.
2052, 2064 (1984). First, appellant must demonstrate that counsel’s representation
fell below an objective standard of reasonableness under prevailing professional
norms. Howland v. State, 966 S.W.2d 98, 104 (Tex. App.—Houston [1st Dist.]
1998), aff’d, 990 S.W.2d 274 (Tex. Crim. App. 1999). Second, appellant must
establish that counsel’s performance was so prejudicial that it deprived him of a fair
trial. Id. Thus, appellant must show that a reasonable probability exists that, but for
counsel’s unprofessional errors, the result of the proceeding would have been
different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Howland, 966 S.W.2d at
104. Appellant has the burden to establish both of these prongs by a preponderance
of the evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998);
Davis v. State, 830 S.W.2d 762, 765 (Tex. App.—Houston [1st Dist.] 1992, pet.
ref’d).
          Although appellant filed a motion for new trial, he did not allege ineffective
assistance of counsel in the motion, nor is the record sufficient to show why counsel
failed to object. We cannot speculate beyond the record provided. Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Gamble v. State, 916 S.W.2d 92, 93
(Tex.App.—Houston [1st Dist.] 1996, no pet.). Reviewing the record, therefore, we
must presume that appellant’s trial counsel’s strategy was sound. Gamble, 916
S.W.2d at 93. Appellant has failed to meet the first prong of the Strickland test.          Accordingly, we overrule point of error seven.
 
Double Jeopardy
          In point of error eight, appellant contends that his “convictions for murder and
aggravated robbery constitute double jeopardy because the elements of both
indictments contain proof of the same elements for conviction and the aggravated
robbery would be a lesser included offense of murder.”
          The double jeopardy clause of the United States Constitution


 provides three
protections: (1) it protects against a second prosecution for the same offense after
acquittal; (2) it protects against a second prosecution for the same offense after
conviction; and (3) it protects against multiple punishments for the same offense.
Cervantes v. State, 815 S.W.2d 569, 573 (Tex. Crim. App. 1991). Because appellant
was subjected to only one trial, the issue is whether he received multiple punishments
for the same offense.
          To make this determination, we must examine the statutes that define the two
offenses to see whether each statute requires proof of an additional element that the
other does not; this is referred to as the Blockburger test. See Blockburger v. United
States, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).
          Aggravated robbery and murder are separate offenses. Mack v. State, 772
S.W.2d 162, 165 (Tex. App.—Dallas 1989, no pet.). Murder requires proof of death;
aggravated robbery does not. Aggravated robbery requires proof of intent to commit
theft; murder does not. Compare Tex. Pen. Code Ann. § 19.02 (Vernon 1989)
(murder) & Tex. Pen. Code Ann. § 29.03 (Vernon Supp. 2002) (aggravated robbery). 
Because the two statutes pass the Blockburger test, appellant did not face double
jeopardy.
          We overrule point of error eight.
Conclusion
          We affirm the judgments.





                                                             Sherry Radack
                                                             Justice


Panel consists of Justices Nuchia, Jennings, and Radack.

Do not publish. Tex. R. App. P. 47.