**STATE of Tennessee, Appellee,**

v.

**Troy COOK and William Harcrow,
Defendants/Appellants.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

Dec. 9, 1987.

Permission to Appeal Denied by
Supreme Court April 4, 1988.

W.J. Michael Cody, Atty. Gen., Kathy M. Principe, Asst. Atty. Gen., William H. Cox, III, Asst. Dist. Atty. Gen., for appellee.

William Heck, Lloyd A. Levitt, Chattanooga, for defendants/appellants.

## OPINION

BIRCH, Judge.

The defendants, Vivien Troy Cook and William Harcrow, were each convicted of felonious sale or delivery of diazepam (a Schedule II controlled substance) and felonious conspiracy to sell or deliver a substance containing more than 30 grams of cocaine (a Schedule II controlled substance). Additionally, Harcrow was convicted of yet another sale or delivery of diazepam.

Cook was sentenced for an especially aggravated offense, Range II, to imprisonment for five (5) years on the sale and delivery conviction and forty-five (45) years on the conspiracy conviction. He was found to be a persistent, dangerous, and multiple offender; the sentences were ordered consecutive for a total effective sentence of fifty (50) years.

Harcrow was sentenced for an especially aggravated offense, Range II, to thirty-five (35) years imprisonment in each of three counts, and five (5) years on two counts, to be served concurrently, for a total effective sentence of thirty-five (35) years.

Both defendants appeal as of right.

Vivien Troy Cook raises for our review the sole issue of whether there is sufficient evidence to support the verdict in the conspiracy case.

William Harcrow contends that he was not effectively assisted by counsel.

Our summary of pertinent evidence will apply to and suffice for both defendants except where restricted to issues involving a single defendant.

An agent of the Tennessee Bureau of Investigation posed as a college student in order to investigate drug trafficking in the McMinnville area. The agent quickly won the confidence of a co-defendant, Alton Parker, and others, and was allowed to buy

small quantities of drugs. This newly-won trust enabled him to purchase 800 quaalude pills (a Schedule II controlled substance, Diazepam). The agent next arranged with defendant Parker to purchase a large quantity of cocaine (about 4 ounces). Details of the proposed purchase were discussed and worked out, and the transaction was to take place at Harcrow's house in Chattanooga. Focusing on the circumstances surrounding the proposed drug sale, Parker, while telephoning to make certain that all was in readiness to close the sale, asked the person who answered the phone for "Troy or Bill" (defendant Cook's name is Vivien Troy).

The transaction progressed, and when Parker and agents arrived at Harcrow's residence, neither Cook nor Harcrow was there. A short time later, Harcrow and Cook arrived together. Upon their arrival, they went up on the front porch and conversed with Parker. Harcrow then drove down the road to "check out a suspicious looking vehicle." He returned, apparently satisfied that no danger threatened.

Agents observed Cook in the act of retrieving a brown paper sack from behind the shrubs outside Harcrow's residence.

When the agents were invited into the room to view the contraband, the cocaine was displayed on the bed in a brown paper sack.

This transaction was to include the purchase of another large quantity of quaaludes. The agents observed Cook pass four "Zip-lock" bags containing quaaludes to Parker.

Cook says that this evidence is insufficient to convict him. We disagree.

## SUFFICIENCY OF THE EVIDENCE

When the sufficiency of the evidence is challenged, the standard for appellate review is whether, after considering the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. On appeal, the state is entitled to the strongest legitimate view of the evidence, and all reasonable and legit-

imate inferences which may be drawn from the proof. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). In a criminal action, a conviction will be set aside only where the reviewing court finds that the "evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tennessee Rules of Appellate Procedure 13(e). In a jury trial, a guilty verdict, approved by the trial judge, accredits the testimony of the state's witnesses and resolves all conflicts in testimony in favor of the theory of the state. *State v. Hatchett,* 560 S.W.2d 627, 630 (Tenn.1978).

The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the testimony, however, are matters entrusted exclusively to the jury as the triers of fact. *Byrge v. State,* 575 S.W.2d 292, 295 (Tenn.Crim.App. 1978). The jury in this case chose to accredit the testimony of the prosecution witnesses and reject the testimony of the defendant.

■ Generally, conspiracy is a partnership in crime. It is an *attempt* to commit an offense, since its object need not be attained. 15A C.J.S. *Conspiracy* § 35(1) (1967).

■ Mere knowledge, acquiescence, or approval of the act, without cooperation or agreement to cooperate, is not enough to constitute one a party to a conspiracy. *Solomon v. State,* 168 Tenn. 180, 76 S.W.2d 331, 334 (1941).

■ Personal motives and expectations of the conspirators usually shed little light on the matter, for all of us know that such things are generally secret. *See State v. Smith,* 197 Tenn. 350, 273 S.W.2d 143 (1954).

■ The agreement need not be manifested by any formal words or by a written agreement. *Randolph v. State,* 570 S.W. 2d 869, 871 (Tenn.Crim.App.1978).

■ The unlawful confederation may be established by circumstantial evidence, and by the conduct of the parties in the execu-

tion of the criminal enterprise. *Randolph* at 871.

■ The salient evidence against Cook which the jury could consider included:

1. His association with Parker and Harcrow;
2. His arrival at the site of the transaction in the company of Harcrow;
3. His conversation with Parker upon arrival at the Harcrow house;
4. His handling of the brown paper sack, regardless of contents;
5. His passing the four "Zip-lock" transparent bags containing quaaludes to Parker; and
6. The vastness of the operation.

In our opinion, these facts are quite sufficient to support the jury verdict. Considering them, a rational trier of fact could easily conclude that Cook was a knowledgeable participant in the illegal enterprise.

We therefore conclude that any rational trier of fact could have found the essential elements of the crime of conspiracy to sell or deliver a substance containing more than 30 grams of cocaine beyond a reasonable doubt. *See* Tenn.Code Ann. §§ 39–6–407, 408, 417. The evidence of defendant's guilt in each case more than satisfies the standard prescribed in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and Tennessee Rules of Appellate Procedure 13(e).

The appellant's assignment of error in this regard is dismissed.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant Harcrow says he was not effectively assisted by counsel. In support, he specifically complains of:

1. Counsel's failure to prepare for trial;
2. Counsel's failure to call three (3) witnesses (Harcrow's son and two co-defendants);
3. Counsel's failure to file a motion to sever;

and

4. Counsel's conflicting interest (receiving payment from a co-defendant).

In overruling Harcrow's motion for new trial, the trial judge found that these allegations of ineffective assistance were not meritorious.

■ For an appellant to prove that he was ineffectively assisted by counsel, he must show that the advice given or the services rendered by his counsel were not within the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975). He must also show that, but for his counsel's deficient performance, the result of his trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Best v. State*, 708 S.W.2d 421, 422 (Tenn.Crim.App.1985).

■ The trial judge's findings on questions of fact are to be given the weight of a jury's verdict and are conclusive on appeal unless we find that the evidence preponderates against his judgment. *Clenny v. State*, 576 S.W.2d 12 (Tenn.Crim.App.1978). The burden is on the appellant to show that the evidence preponderates against the findings of the trial judge. *State v. Nixon*, 669 S.W.2d 679, 684 (Tenn.Crim.App.1983); *Goodner v. State*, 484 S.W.2d 364 (Tenn. Crim.App.1972). Harcrow has not carried this burden.

■ Harcrow's counsel was adequately prepared for trial. His original counsel, Jon Seaborg, was to be out of the country on the date set for trial, consequently he enlisted Phil Floyd to handle the trial. This arrangement was known for approximately one month prior to trial. Floyd and Seaborg discussed the case on numerous occasions. Floyd discussed the case with Harcrow prior to trial, talked with co-defendant Guinn and with attorneys for the other co-defendants, and actively and vociferously participated at trial.

■ Counsel's failure to call certain witnesses, considering all the circumstances, was an informed strategic decision, and thus is not ineffective assistance. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn.1982).

The first such witness was Harcrow's son, who was out of town during the trial. He was not subpoenaed, but, as the trial judge noted, family members rarely are. The son's testimony would have been cumulative to Harcrow's daughter's testimony. The other witnesses were co-defendants who elected not to testify. Counsel did not call them as witnesses because he learned through discussions with their attorneys that they did not intend to exonerate him.

With regard to the complaint that counsel's failure to seek a separate trial was derelict, we note that astute defense counsel often prefer a joint trial as a matter of strategy. Certainly, the failure to seek severance in the case *sub judice* is not per se below-standard representation. Moreover, the defendant fails to point out to us how he was prejudiced by a joint trial, and why he feels that he could have benefitted from severance, should the same have been granted.

As to the alleged conflict of interest, Seaborg was not aware of any payments from a co-defendant. He knew that Cook owed money to Harcrow, but he never received payment from anyone other than Harcrow or Harcrow's sister. This allegation is not supported by the facts.

The judgment of the trial court is in all aspects affirmed.

BYERS and SCOTT, JJ., concur.