# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville May 15, 2012

## STATE OF TENNESSEE v. ALEJANDRO NEAVE VASQUEZ and NAZARIO ARAGUZ

**Appeal from the Criminal Court for Davidson County**
**No. 2009-B-1141     Steve Dozier, Judge**

---

**No. M2010-02538-CCA-R3-CD - Filed November 28, 2012**

---

A Davidson County jury convicted appellants, Alejandro Neave Vasquez and Nazario Araguz, of conspiracy to deliver 300 grams or more of cocaine in a drug-free school zone and possession with intent to deliver 300 grams or more of cocaine in a drug-free school zone. The trial court sentenced appellant Vasquez to an effective twenty-year sentence and sentenced appellant Araguz to an effective seventeen-year sentence. On appeal, both appellants argue that: (1) the trial court erred in denying their motions to suppress; (2) the trial court erred in admitting evidence regarding money recovered by law enforcement; (3) the evidence was insufficient to support their convictions; and (4) the trial court erred in denying appellants' requests for a special jury instruction and in granting the State's request for a special jury instruction. After reviewing the record, the parties' briefs, and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

James O. Martin, III (on appeal); Richard McGee (at trial), Nashville, Tennessee, for the appellant, Alejandro Neave Vasquez.

William E. Griffith (on appeal); Robert P. Ballinger (at trial), Nashville, Tennessee, for the appellant, Nazario Araguz.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John Zimmerman and Rachel Thomas, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## I. Facts and Procedural History

A Davidson County grand jury indicted each appellant for one count of conspiracy to deliver 300 grams or more of cocaine in a drug-free school zone and one count of possession with intent to deliver 300 grams or more of cocaine in a drug-free school zone. Appellants filed motions to suppress the cocaine and money that law enforcement officers found when they stopped a vehicle in which appellant Araguz was driving and appellant Vasquez was a passenger. The trial court denied the motions to suppress, and appellants were convicted as charged at trial. The facts were set forth at the suppression hearing and at trial.

### A. Suppression Hearing

Detective John Simonik with the 20th Judicial District Drug Task Force testified that on February 18, 2009, a confidential informant advised him of a potential drug transaction. Detective Simonik had used the informant in previous investigations. He said the information provided by this informant in the previous investigations produced evidence of criminal activities and led to the recovery of narcotics, the seizure of weapons, and convictions of those parties involved.

Regarding this case, the informant told Detective Simonik he could arrange for an unknown Hispanic male to deliver to him a kilogram ("kilo") of cocaine. The informant had been talking to an unknown black male subject who arranged for the Hispanic male to bring the kilogram of cocaine to 528 Norton Avenue. Detective Simonik told the informant to

> go look at this kilo of cocaine and cook a piece of [it] up into crack cocaine and tell them that it wasn't coming back good, that it wasn't producing the right amount of cocaine and then tell him that he didn't want . . . the kilo of cocaine because of this reason.

Detective Simonik explained that the plan was for the informant to send the cocaine back so law enforcement could track it and find the "stash house."

Before the transaction, officers placed a recording device on the informant, searched the informant for narcotics and contraband, and confiscated the informant's "personal money." The officers were at a remote location, and the recording device allowed them to listen to the informant's communications while at the Norton Avenue home. Detective Simonik stated that the informant arrived at the home on Norton Avenue and went inside. A white Volkswagen Jetta, which was registered to appellant Araguz, drove up to the home,

and two unknown Hispanic males exited the vehicle. Detective Simonik did not see the two men enter the home. However, the informant told him they entered and described them to Detective Simonik. The recording device captured the informant's asking the men about the prices of cocaine.

The State played the audio recording from the transaction in open court. Detective Simonik testified that he recognized the informant's voice on the recording. He said he heard the men open the package and heard the informant cook the cocaine in a microwave. After cooking the cocaine, the informant told the men the cocaine "cooked up real soft," just as Detective Simonik had directed him. The informant also told the men the cocaine did not produce the correct weight of crack cocaine, which indicated that it was not pure. The informant asked the men to lower the original price for the kilo, which was $32,500, to $30,000. One of the men told the informant that "if the [informant] could get something going on, they would cut the [informant,] and they could come tomorrow." The informant and the Hispanic men left the residence. Detective Simonik met with the informant and searched him. The Hispanic men left the home in the Jetta, and surveillance units followed the men to a laundromat.

Detective Simonik testified that Detective Justin Fox was in a surveillance unit reporting his observations to Detective Simonik via police radio. Detectives followed the kilogram of cocaine as it was transferred to multiple vehicles. A suspect eventually brought the kilogram of cocaine to a house at 925 Strand Fleet Drive, in Antioch, Tennessee. Detective Simonik remained in contact with other detectives who reported their observations to him. Based on the observations of the other officers, Detective Simonik went to the Strand Fleet Drive house.

When Detective Simonik arrived at the house on Strand Fleet Drive, he observed the black Chevrolet Tahoe that the surveillance units were also following. Detective Simonik saw Jose Aragus[1] exit the Tahoe and go inside the house carrying a white bag. Surveillance officers had previously described the white bag to Detective Simonik. The detectives determined this location was possibly the "stash house," so Detective Simonik went to obtain a search warrant while other detectives continued to conduct surveillance on the house.

Detective Simonik stated that while he was obtaining a search warrant, officers summoned him to the scene of a vehicle stop on Richards Road. The vehicle that the officers stopped was a brown Ford F-150 with a personalized license plate that said "Araguz." The officers on the scene had already searched the vehicle when Detective Simonik arrived. They

---

[1] The record indicates that Jose Aragus and Appellant Araguz spell their surnames differently. Aragus was indicted with appellants; however, he is not a party to this appeal.

found one kilogram of cocaine inside a white bag in the engine compartment of the vehicle. Detective Simonik examined the bag and said it looked like the bag he had observed earlier. The officers also seized a brown paper bag containing a large amount of money from under the front seat and plastic bags containing large amounts of money from under the backseat of the vehicle. The total amount of money seized was $123,015.

Appellant Araguz was driving the brown F-150, and appellant Vasquez was a passenger. Detectives advised appellants of their *Miranda* rights. Appellant Vasquez said he understood his rights and declined to give a statement. Appellant Araguz stated that he understood his rights and gave a statement to detectives. Detective Simonik said he did not offer an interpreter to appellant Araguz during the traffic stop because "it appeared that he spoke pretty good English."

On cross-examination, Detective Simonik testified that the informant was reliable and had helped in three other investigations, two that yielded the expected amount of drugs and one that yielded more than the expected amount. The informant was on probation when he helped with these three investigations. Detective Simonik recalled that the informant initially began helping the drug task force to "work off" charges and later became a paid informant. Under their agreement, the informant was not to arrange any transactions without Detective Simonik's knowledge. He said he did not ask the informant for the unknown black male's name or interview the unknown black male to learn any additional information. Detective Simonik was unsure if detectives executed a search warrant at the home of the informant's friend but said they might have done so.

Detective Simonik testified that the informant did not give him names or physical descriptions of the Hispanic men with whom he was going to meet. He also did not describe the vehicles that would be involved in the transaction. Detective Simonik said he did not know who lived at 528 Norton Avenue, but he thought the unknown black male was connected to that address. He believed that the unknown black male was at the house on Norton Avenue and said the officers did not search him before he went into the home. The detectives did not photograph or video record the activity at the house on Norton Avenue. Detective Simonik stated that he first saw appellant Vasquez when he arrived at the scene of the traffic stop, and he did not have any evidence that appellants were in the Norton Avenue home.

Detective Justin Fox with the Metro Nashville Police Department testified that he participated in the investigation that led to appellants' arrests. He was a member of the team that conducted surveillance of 528 Norton Avenue. On February 18th at 4:53 p.m., a black male arrived at the home on Norton Avenue. The informant arrived at the home at 6:30 p.m.,

and the white Volkswagen Jetta arrived at 6:37 p.m. Detective Fox said he observed two Hispanic men exit the Jetta and enter the home.

Detective Fox testified that he also observed the informant and the two Hispanic men leave the home. The two Hispanic men drove away in the Jetta at 7:03 p.m. One Hispanic man was heavyset and wore a red hat. The other Hispanic man was skinny, spoke English, and translated for the heavyset Hispanic man. Detective Fox followed the Jetta after it left. The Jetta pulled into the parking lot of a laundromat, and two Hispanic men exited the vehicle and got into a white pickup truck. Other surveillance units followed the white pickup truck while Detective Fox continued to follow the Jetta, which was driven by the heavyset Hispanic man who was wearing the red hat.

Detective Fox stated that the Jetta entered the Nob Hill Villa apartment complex and parked in front of the D building. Detective Fox observed the man exit the vehicle and open the vehicle's trunk. The man looked around to ensure no one was watching him and retrieved a dark-colored block from the trunk. Detective Fox stated that he thought the block was cocaine based on his experience. He said the cocaine was packaged in a compressed brick form when it was for sale and distribution. The heavyset Hispanic man placed the dark-colored block in a shiny white bag, looked around again, and got back into the Jetta.

Detective Fox stated that the man left the Nob Hill Villa Apartments, and he continued to follow the Jetta as it went across the street to a gas station and parked in front of a black Chevrolet Tahoe. The heavyset Hispanic man exited the Jetta with the white bag that contained the dark-colored block and went to the passenger side of the Tahoe. The man leaned into the vehicle and placed the white bag in the Tahoe's middle console area. While he was doing this, Jose Aragus was pumping gas for the Tahoe. The heavyset Hispanic man then returned to his car and left. Aragus finished pumping his gas, got into the Tahoe, and drove away with Detective Fox following him.

Detective Fox testified that he followed the Tahoe to 925 Strand Fleet Drive. The Tahoe parked in the driveway, and Detective Fox continued to watch the Tahoe and the men. Aragus exited the Tahoe and went inside the home. Detective Fox observed a brown F-150 pickup truck that had "Araguz" on the license plate pull into the home's driveway. Appellant Vasquez and appellant Araguz exited the truck and entered the home. Appellants and Aragus eventually exited the home, and Detective Fox observed appellant Vasquez carrying the white bag containing the dark-colored block. Appellant Araguz opened the hood of the brown pickup truck, and appellant Vasquez placed the white bag on the left side of the engine compartment. Appellants then got into the brown pickup truck and left. Surveillance units followed appellants. A short time later, Aragus exited the home, got into the Tahoe, and left. Detective Fox followed him.

On cross-examination, Detective Fox stated that he did not see the heavyset Hispanic man carry anything out of the Norton Avenue house. He stated that he was unable to see through the white bag that contained the dark-colored block. The first time Detective Fox saw the cocaine was at the Nob Hill Villa Apartments. He was not present when officers recovered the evidence from the vehicles.

Detective Fox stated that after the heavyset Hispanic man transferred the package to the Tahoe, he drove away in the Jetta. Detective Fox followed the Tahoe because it had the drugs in it. None of the officers followed the Jetta, and Detective Fox did not know the identity of the heavyset Hispanic man.

Sergeant Robert Fidler with the Metro Nashville Police Department testified that he participated in the investigation that led to appellants' arrests. Director James McWright and Detective Fox told him about their observations at 925 Strand Fleet Drive, including the brown F-150 that left that address. Sergeant Fidler stated that the brown F-150 passed him as it was going to and from the address. He said Drug Enforcement Agency authorities initiated a traffic stop of the brown F-150, and he participated in the search. Officers immediately took appellants into custody. Sergeant Fidler opened the hood of the vehicle and observed the package Detective Fox had described to him. He called for a K-9 unit to come to the scene to detect any hidden drugs. Officers on the scene did not touch the drugs until the K-9 unit arrived. Sergeant Fidler further testified that officers seized more than $120,000 from the vehicle.

Officer Isaac Wood with the Metro Nashville Police Department testified that he participated in the investigation of this case. He identified an affidavit he completed that stated the probable cause for appellant Vasquez's arrest. The affidavit alleged appellant Vasquez was a passenger in a vehicle that picked up a kilogram of cocaine from 925 Strand Fleet Drive. It further stated that officers observed someone put a bag containing a kilogram of cocaine into the engine compartment of the vehicle in which appellant Vasquez was a passenger. According to the affidavit, the officers followed the vehicle until it reached a safe area for a felony traffic stop. The vehicle went past J.E. Moss Elementary School and pulled into a parking lot at 941 Richards Road. Officers took appellants into custody. Appellant Vasquez advised officers that the driver was just taking him to his vehicle, which was in the parking lot.

Officer Wood stated that he completed his affidavit based on what officers broadcast over the police radio. He did not see the suspects who put the cocaine in the engine compartment of the vehicle. His affidavit stated, "Officers observed the co-defendant in this case put a bag that contained a kilogram into the engine compartment." He said that when he wrote "co-defendant" he was referring to someone other than appellant Vasquez.

-6-

On cross-examination, Officer Wood testified that officers did not include the names of the suspects in the brown F-150 while broadcasting the information about the vehicle. However, they identified the suspects by describing their clothing and physical attributes. Officer Wood later "matched up" each suspect based on those descriptions and included that information in his affidavit. Officer Wood estimated that officers arrested appellants approximately fifteen to twenty minutes after he heard over the radio that someone placed cocaine under the hood of the vehicle.

At the conclusion of the hearing, the trial court denied the motions to suppress, finding that the officers had reasonable suspicion that criminal activity was occurring and that the police officers' observations gave probable cause to stop the vehicle and search it for contraband.

## B. Trial

At the July 19, 2010 jury trial, several officers testified regarding the 20th Judicial District Drug Task Force's investigation on February 18, 2009. Director James McWright, Sergeant Robert Fidler, Detective Justin Fox, and Detective Isaac Wood presented testimony corroborating each other's testimony and testified consistently with the evidence established at the suppression hearing.

In addition to their testimony consistent with the facts established at the suppression hearing, the officers' testimony at trial further showed that the package they recovered from under the hood contained a "kilo-shaped" object that had been cut open. The object was a brick of white powdery substance "one and [a] half to two inches high, the size of a kilogram, wrapped in black tape that had been cut open with a smaller bag of crack cocaine pushed back down in the hole and taped back over it." Sergeant Fidler testified that kilograms were typically packaged like the object the officers found in this case, "[a]bout one and a half to two inches high, kind of in a rectangular form." The smaller bag of crack cocaine that the informant had cooked was in the middle of the brick. Officers also found a brown shopping bag containing a "Ziploc" storage bag containing $20,000 to $30,00 under the passenger seat. They found more plastic bags containing money under the backseat of the vehicle. Officers recovered approximately $123,000 from the vehicle, $3,784 from the appellant Vasquez, and $7,843 from appellant Araguz. Sergeant Fidler testified that he was not aware of any connection between the money found in the truck and the activity at the Norton Avenue home or the white bag that contained the kilogram.

Detective Wood placed the cocaine and money that officers recovered from the vehicle in his police vehicle and transported them to the drug task force office. He stated that the block of cocaine was already cut open when he recovered it from the scene. The block

contained a small clear cellophane bag of cocaine base. At the drug task force office, Detective Wood photographed and weighed the cocaine. He also performed a field test on it. The following day, Detective Wood transported the evidence to the police department's property room.

The officers who were still conducting surveillance at the Strand Fleet Drive home observed Aragus exit the house, get into the Tahoe, and leave. Director McWright instructed Officers Fox and Wood to stop Aragus. According to Director McWright, Aragus was cooperative and signed a consent form allowing officers to search his home without a warrant. Officers searched the Strand Fleet Drive home, which belonged to Aragus's girlfriend, and recovered a small amount of marijuana. They did not find any "testing equipment" at the home. However, the officer found $6,000, three counterfeit $100 bills, two guns, and six cellular telephones inside the home.

Denotra Patterson, a special agent forensic scientist with the Tennessee Bureau of Investigation, testified as an expert in forensic chemistry. She stated that she tested the substance recovered in this case and determined that it was cocaine, a Schedule II controlled substance. The total weight of the cocaine was 2.7 pounds, which was more than 300 grams. She also tested a substance that she determined to be cocaine base and said it weighed 4.1 grams. She explained that cooking the cocaine powder converted it to cocaine base.

David Klein, the manager of the Metropolitan Planning Department Mapping Division, testified that he generated an aerial map for the area around J.E. Moss Elementary school. He stated that the north side of the school faces Richards Road. The map showed a 1,000-foot boundary around the school. Mr. Klein testified that the area of traffic stop on Richards Road was within 1,000 feet of the school.

Steve Keele testified that he was a director of school security for Metro Nashville public schools. He stated that his duties required him to know where schools are located throughout Davidson County. He was familiar with J.E. Moss Elementary School and said that in February 2009, it was an active elementary school operated by the board of education.

The State rested its case-in-chief. Appellant Araguz waived his right to testify. Appellant Vasquez likewise declined to testify; however, he entered Sergeant Fidler's testimony from the suppression hearing as substantive evidence.

After hearing the evidence and deliberating, the jury convicted both appellants of conspiracy to deliver more than 300 grams of cocaine in a drug-free school zone and possession with intent to deliver more than 300 grams of cocaine in a drug-free school zone. The trial court sentenced appellant Vasquez to serve concurrent twenty-year sentences for

each count, for a total effective sentence of twenty years in the Tennessee Department of Correction. The court sentenced appellant Araguz to concurrent seventeen-year sentences for each count, for a total effective sentence of seventeen years to be served in the Tennessee Department of Correction. Appellants filed motions for new trials, which the trial court denied, resulting in the instant appeal.

## II. Analysis

### A. Motion to Suppress

Appellants first argue that the trial court erred by denying their motions to suppress the evidence obtained from the brown Ford F-150 pickup truck. They contend that the officers did not have probable cause to support the warrantless seizures of appellants and resulting warrantless search of the vehicle because there was not a sufficient nexus between the activity at the Norton Avenue home and the police officers' observations. The State responds that the trial court properly denied the motions to suppress because the officers had probable cause to arrest appellants and search the vehicle. We agree with the State.

A trial court's findings of fact at a hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). As the trier of fact, the trial court is in a better position to assess the witnesses' credibility, determine the weight of the evidence and the value to be afforded it, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). However, the trial court's conclusions of law are not binding on this court. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). Further, the trial court's applications of law to the facts are questions of law that we review de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). On appeal, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn therefrom. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The defendant bears the burden of establishing that the evidence contained in the record preponderates against the trial court's findings of fact. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

At a hearing on a motion to suppress evidence recovered as a result of a warrantless search, the State must prove that the search was reasonable. *State v. Coulter*, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001). To carry its burden, the State must prove that law enforcement conducted the warrantless search or seizure pursuant to one of the narrowly-defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Our supreme court has held:

[U]nder both the federal constitution and our state constitution, a search without a warrant is presumptively unreasonable, and any evidence obtained pursuant to such a search is subject to suppression unless the [S]tate demonstrates that the search was conducted under one of the narrowly defined exceptions to the warrant requirement. Moreover, Tennessee has approved of and adopted exceptions to the requirement of obtaining a valid search warrant, including search incident to arrest, plain view, stop and frisk, hot pursuit, search under exigent circumstances, and others.

*State v. Cox,* 171 S.W.3d, 174, 179 (Tenn. 2005) (internal citations omitted).

Exigent circumstances exist: "'(1) when officers are in 'hot pursuit' of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals.'" *State v. Adams*, 238 S.W.3d 313, 321 (Tenn. Crim. App. 2005) (quoting *State v. Givens*, No. M2001-00021-CCA-R3-CD, 2001 WL 1517033, at *3 (Tenn. Crim. App. Nov. 29, 2001)). In *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008), our supreme court added an additional situation, "to render emergency aid to an injured person or to protect a person from imminent injury," to the list of circumstances that would establish exigent circumstances. The mere existence of one of these circumstances does not, in and of itself, validate a warrantless search; the State must also show that "the exigencies of the situation made the search imperative." *State v. Yeargan*, 958 S.W.2d 626, 635 (Tenn. 1997). The question of whether the exigent circumstances were sufficient to justify a warrantless search is a mixed question of law and fact that we review de novo. *Meeks*, 262 S.W.3d at 722.

The following guidance from our supreme court is instructive on this issue:

[I]n assessing the constitutionality of a warrantless search, the inquiry is whether the circumstances give rise to an objectively reasonable belief that there was a compelling need to act and insufficient time to obtain a warrant. The exigency of the circumstances is evaluated based upon the totality of the circumstances known to the governmental actor at the time of the entry. Mere speculation is inadequate; rather, the State must rely upon specific and articulable facts and the reasonable inferences drawn from them. The circumstances are viewed from an objective perspective; the governmental actor's subjective intent is irrelevant. The manner and the scope of the search must be reasonably attuned to the exigent circumstances that justified the warrantless search, or the search will exceed the bounds authorized by exigency alone.

*Id.* at 723-24.

As noted above, there are several exceptions to the presumption that a warrantless search and seizure is invalid, including searches incident to lawful arrests and searches supported by probable cause in the presence of exigent circumstances. *State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009) (citing *State v. Day*, 263 S.W.3d 891, 901 n. 9 (Tenn. 2008); *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007)). A well-recognized exception to the rule that warrantless searches are unreasonable is "that an officer of the law may search an automobile without a warrant if, at the time, he has probable cause to believe that it contains contraband and if the circumstances existing are such that the vehicle will probably escape before a search warrant can be obtained." *State v. Hughes*, 544 S.W.2d 99, 101 (Tenn. 1976) (citing *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216 (1968)). "Probable cause in the context of a warrantless arrest 'exists, if at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.'" *State v. Lewis*, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000) (quoting *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997)).

Here, the officers had probable cause to arrest appellants and search the vehicle that they occupied based on the trustworthy and reliable information from their observations and their reasonable inferences that appellants had placed a kilogram of cocaine under the hood of the vehicle. Appellants claim a lack of a nexus between the activity at the Norton Avenue home and the search and seizure of appellants. However, the evidence showed that after the informant told the Hispanic men at Norton Avenue that the cocaine was not cooking properly, they negotiated the price and eventually left the home with a dark colored block that officers believed to be the kilogram of cocaine. Detective Fox testified that based on his law enforcement experience, he recognized the block as a kilogram of cocaine. "Our courts have previously held that an officer, qualified by training and experience to detect and identify [narcotics], can establish probable cause upon such detection." *State v. Luis Perez*, W2004-00980-CCA-R3-CD, 2005 WL 1114463, at * 4 (Tenn. Crim. App. May 11, 2005) (citing *State v. Hughes*, 544 S.W.2d 99, 101 (Tenn. 1976); *Hicks v. State*, 534 S.W.2d 872, 873-74 (Tenn. Crim. App. 1975)). Officers observed the kilogram of cocaine as it was transferred from the Jetta to the Tahoe and from the Tahoe to the brown F-150 occupied by appellants. Moreover, appellants concealed the contraband by placing it in the engine compartment of the vehicle, which supported the officers' belief that the object was cocaine. *See State v. Alvin Dean Shaver*, No. 134, 1986 WL 4292, at * 8 (Tenn. Crim. App, April 9, 1986) (noting that an officer's observation of appellant attempting to hide contraband coupled with prior information about the crime produced enough probable cause to justify a warrantless search and seizure.) Considering the totality of the circumstances, including information provided by the informant and the officer's observations, the officer had

probable cause to search the vehicle in which appellants were riding. Accordingly, we conclude that the trial court's denial of the motion to suppress was proper and the evidence obtained from the stop of the vehicle was admissible. Appellants are not entitled to relief on this issue.

## B. Motion in Limine

Appellants next argue that the trial court committed error when it denied their motions in limine to prevent the State from introducing evidence about the money found in the vehicle. They contend that the money was not relevant to any fact in issue. The State responds that appellants waived this issue because the record does not contain a transcript of the hearing on the motion or the trial court's order disposing of the motion. We agree with the State that appellants have waived this issue.

Appellants have a duty to prepare a record that conveys "a fair, accurate and complete account of what transpired with respect to the issues which form the basis of the appeal" and will enable the appellate court to decide the issues. Tenn. R. App. P. 24(a); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999).

> It is well-established that an appellate court is precluded from considering an issue when the record does not contain a transcript or statement of what transpired in the trial court with respect to that issue. Moreover, the appellate court must conclusively presume that the ruling of the trial judge was correct, the evidence was sufficient to support the defendant's conviction, or the defendant received a fair and impartial trial. In summary, a defendant is effectively denied appellate review of an issue when the record transmitted to the appellate court does not contain a transcription of the relevant proceedings in the trial court.

*State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). Accordingly, we conclude that appellants did not adequately preserve this issue for appeal and have thereby waived appellate review of this claim. *See State v. Young*, No. W2008-01885-CCA-R3-CD, 2010 WL 161502, at *2 (Tenn. Crim. App. Jan. 15, 2010).

## C. Sufficiency

Both appellant Araguz and appellant Vasquez challenge the sufficiency of the convicting evidence. Specifically, they contend that the evidence was insufficient to prove that they knowingly possessed cocaine or conspired to deliver cocaine.

The standard for appellate review of a claim of insufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain appellants' convictions for possession with intent to deliver 300 grams or more of cocaine in a drug-free school zone, the State was required to prove that appellants knowingly possessed 300 grams or more of cocaine with the intent to deliver. Tenn. Code Ann. § 39-17-417 (2010). Possession of a controlled substance may be actual or constructive. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). A person constructively possesses a drug when the person has both the power and intention to exercise dominion and control over the drugs either directly or indirectly through others. *See State v. Patterson*, 966 S.W.2d 435, 444-45 (Tenn. Crim. App. 1997). "One's mere presence in an area where drugs are discovered, or one's mere association with a person who is in possession of drugs, is not alone sufficient to support a finding of constructive possession." *Shaw,* 37 S.W.3d at 903.

"Proof that a possession is knowing will usually depend on inference and circumstantial evidence. Knowledge may be inferred from control over the vehicle in which the contraband is secreted." *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995) (internal citations omitted) (citing *United. States v. Pierre,* 932 F.2d 377, 392 (5th Cir. 1991)).

Appellants' sole contention is that there was no evidence that they knowingly possessed cocaine. "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b) (2010). Viewed in the light most favorable to the State, the evidence showed that appellants entered the house on Strand Fleet Drive that contained the cocaine. Officers then observed appellants exit the house. When they exited, appellant Vasquez was holding the packaged cocaine. Appellant Araguz opened the hood of his truck and stood by as appellant Vasquez placed the package in the engine compartment of the truck. Appellant Araguz then closed the hood of his truck, and appellants drove away in the truck with the package concealed under the hood. Appellants' joint effort in concealing the package under the vehicle's hood is circumstantial evidence that they knew the package contained cocaine and were attempting to prevent its discovery. *See State v. Randall Bishop*, No. M2004-02641-CCA-R3-CD, 2005 WL 3038624, at *3 (Tenn. Crim. App. Nov. 8, 2005) (noting that "the defendant's attempt to hide the iodine jug provided evidence of his knowledge of the manufacturing as well as his intent to prevent discovery of the process").

Moreover, the large quantity of cocaine in appellants' possession was circumstantial evidence that appellants possessed the cocaine with the intent to deliver. "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419 (2010). Additionally, the manner in which the cocaine was packaged and the lack of drug paraphernalia are strong indicators that the cocaine was for delivery rather than personal use. *See State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995). The large amount of cash found in the vehicle is another strong indicator that the appellants were engaged in selling drugs for profit. Further, the evidence showed that appellants possessed the cocaine within 1,000 feet of J.E. Moss Elementary School.

To sustain the conviction for conspiracy to deliver 300 grams or more of cocaine in a drug-free school zone, the State had to prove the existence of a conspiracy to commit the crime discussed above.

> The offense of conspiracy is committed if two (2) or more people, each having
> the culpable mental state required for the offense that is the object of the

-14-

conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

Tenn. Code Ann. § 39-12-103(a) (2010). A jury may not convict a defendant of conspiracy to commit an offense unless the State proves the defendant or another with whom the defendant conspired committed an overt act in furtherance of the conspiracy. *Id*. § 39-12-103 (d).

The evidence showed that appellants engaged in a conspiracy to possess 300 grams or more of cocaine with intent to deliver. Appellants need not manifest their agreement to engage in the criminal activity underlying the conspiracy by any formal words or by a written agreement. *State v. Cook*, 749 S.W.2d 42, 44-45 (Tenn. Crim. App. 1987) (citing *Randolph v. State*, 570 S.W.2d 869, 871 (Tenn. Crim. App. 1978)). Further, "[t]he unlawful confederation may be established by circumstantial evidence, and by the conduct of the parties in the execution of the criminal enterprise." *Id.* (citing *Randolph* 570 S.W.2d at 871.). Here, appellants committed overt acts in furtherance of the conspiracy. Appellants entered and exited the home on Strand Fleet Drive together. Upon exiting the home, appellants went to the brown Ford F-150 and, acting in concert, concealed the cocaine in the engine compartment of the truck. After concealing the cocaine, appellants transported it from the home together.

A reasonable jury could have inferred that appellants possessed 300 grams or more of cocaine with the intent to deliver. Moreover, the jury could have reasonably inferred that appellants agreed to commit the offense and committed an overt act in furtherance of the crime. Accordingly, we conclude that the evidence was sufficient to support appellants' convictions, and they are not entitled to relief on this issue.

D. Jury Instructions

Finally, appellants argue that the trial court erred in granting the State's request for a special jury instruction and by denying their request for a special jury instruction. The State responds that the trial court issued a complete charge on the applicable law, thus, appellants are not entitled to relief. We agree with the State.

At trial, defendants have a "constitutional right to a correct and complete charge of the law." *State v. Garrison*, E2011-00496-CCA-R3CD, 2012 WL 3079238, at *6 (Tenn. Crim. App. July 27, 2012) (quoting *State v. Teel*, 793 S.W.2d 236, 249 (Tenn.1990)). "A defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the trial court. *State v. Phipps*, 883

S.W.2d 138, 149-50 (Tenn. Crim. App. 1994) (citing *Casey v. State*, 491 S.W.2d 90, 94 (Tenn. Crim. App. 1972)). However, trial courts are not required to give special instructions if the general jury charge covers the substance of the requested special instructions. *State v. Wendi Nicole Garrison*, No. E2011-00496-CCA-R3CD, 2012 WL 3079238, at *6 (Tenn. Crim. App. July 27, 2012). "The test for whether a special instruction must be given is whether 'there is any evidence which reasonable minds could accept as to any such [defense] . . . .'" *State v. Anthony Eugene Poole*, No. M2010-01179-CCA-R3CD, 2012 WL 826605, at *6 (Tenn. Crim. App. Mar. 9, 2012), *perm. app. denied* (Tenn. Aug. 16, 2012) (quoting *Johnson v. State*, 531 S.W.2d 558, 559 (Tenn. 1975)). Questions regarding the propriety of jury instructions are mixed questions of law and fact; thus, our standard of review is de novo with no presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

On appeal, this court will only invalidate a jury instruction if, "when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). "A challenge to a single jury instruction must be judged in context of the entire jury charge." *State v. Bonam*, 7 S.W.3d 87, 89 (Tenn. Crim. App. 1999). When reviewing a challenge to a particular jury instruction on appeal, the key consideration is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *State v. Odom,* 336 S.W.3d 541, 568 (Tenn. 2011) *cert. denied*, 132 S. Ct. 397, 181 L. Ed. 2d 255 (U.S. 2011) (quoting *State v. Rimmer*, 250 S.W.3d 12, 31 (Tenn. 2008)). A charge that results in prejudicial error is one that fails to fairly submit the legal issues to the jury or misleads the jury about the applicable law. *Wendi Nicole Garrison*, 2012 WL 3079238, at *6 (citing *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997)).

Appellants assert that the trial court committed error when it denied their request for a special jury instruction. Appellants filed motions requesting the court to instruct the jury as follows:

> In order for a verdict of guilty to be returned as to either Count 1 or Count 2 of the indictment the State must [have proved] beyond a reasonable doubt that [appellants] knew that substance contained in the bag retrieved from the [residence of] Jose Aragus was, in fact, cocaine.

The trial court denied the request and instructed the jury pursuant to Tennessee Pattern Jury Instruction 31.04. Appellants assert that the court's instruction confused the issue of whether appellants knew the package contained cocaine and that it lessened the State's burden of proof.

The trial judge instructed the jury that the State had to prove beyond a reasonable doubt that appellants "knowingly possessed Cocaine, a Schedule II controlled substance." The trial judge further instructed the jury as follows:

> "Knowingly" means that a person acts knowingly with respect to the conduct or to the circumstance surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

The trial court's instruction gave a correct and complete charge of the law. It did not confuse the issue of whether appellants knowingly possessed cocaine with the intent to deliver and did not lower the State's burden of proof as alleged by appellants. The instruction clearly defined the "knowingly" mental state, and there was no need for further instruction. Thus, the trial court did not err by denying appellants' requests for special jury instructions regarding the "knowingly" mens rea.

Appellants further argue that the trial court erred when it granted the State's motion for a special instruction explaining that the jury did not have to find that appellants intended to drive through a school zone. In their briefs[2], both appellants challenge the State's request that the trial court instruct the jury that "[t]he State is not required to prove any defendant knowingly or intentionally committed the offense on the grounds or facilities of any school or within one thousand feet of real property that comprises a public or private elementary school, middle school or secondary school." Appellants assert that this instruction gave the jury "the impression that no mental state was required and thus gave a misleading application of the law." We have reviewed the jury charge in this case and find that the trial court did not issue this instruction to the jury. Moreover, this court has previously held that the Drug-Free School Zone Act is an "enhancement statute" and does not require a mens rea. *State v. Smith*, 48 S.W.3d 159, 167 (Tenn. Crim. App. 2000); *see State v. Jenkins*, 15 S.W.3d 914, 917 (Tenn. Crim. App. 1999) (holding that if the state legislature intended the Drug-Free School Zone Act to be an enhancement statute, it does not require explicit mens rea language). Accordingly, we conclude that this issue is without merit and appellants are not entitled to relief.

---

[2] We note that the record does not contain the State's motion requesting the special instruction.

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE