IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 7, 2017

**ALLEN CRAFT v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 12-02286      Paula Skahan, Judge**

_____

**No. W2016-02340-CCA-R3-PC**
_____

The Petitioner, Allen Craft, appeals from the Shelby County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends that trial counsel was ineffective (1) for not filing a motion to sever his case from his codefendant; and (2) for failing "to introduce expert testimony which would tend to negate the requisite mental state required for the offense." Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Monica A. Timmerman, Bartlett, Tennessee, for the appellant, Allen Craft.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Pamela Stark, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

The Petitioner and his codefendant, Cedric Mims, were both "convicted of first degree felony murder, especially aggravated robbery, [and] attempted voluntary manslaughter." State v. Allen Craft & Cedric Mims, No. W2013-01822-CCA-R3-CD, 2014 WL 5107036, at *1 (Tenn. Crim. App. Oct. 10, 2014). Each received a total effective sentence of life imprisonment. Id. Upon affirming their convictions on direct appeal, this court described "[t]he proof against both defendants [as] abundant." Id. at *5. No permission to appeal to our supreme court was sought.

The Petitioner and Mr. Mims, both armed with handguns, approached two men sitting in an SUV parked in front of a grocery store on Vance Avenue in Memphis. Craft, 2014 WL 5107036, at *1. The Petitioner and Mr. Mims demanded money and forced the men out of the SUV. Id. After taking approximately forty dollars, the Petitioner and Mr. Mims shot both of the men. Id. They also shot a third man who attempted to assist the victims. Id. One of the victims, Ronald Ellington, died from a gunshot wound to the chest. Id. at *1, 4.

Neither the Petitioner nor Mr. Mims denied committing the robbery. Craft, 2014 WL 5107036, at *2-4. Both men claimed in statements to the police that they were forced to commit the robbery by a gang leader, Melvin Bridgewater. Id. The only difference in their statements was that each blamed the other for fatally shooting Mr. Ellington. Id. at *3. Mr. Mims also told the police that prior to the robbery, the Petitioner had "put a bullet in his chamber" and told Mr. Mims, "'I got your back.'" Id. Mr. Mims testified at trial, but the Petitioner did not. Id. at *4.

On December 12, 2014, the Petitioner filed a pro se petition for post-conviction relief. An attorney was appointed to represent the Petitioner in this matter, and two amended petitions were subsequently filed. As pertinent to our review, the Petitioner alleged that trial counsel was ineffective for failing to seek a severance from his codefendant and for failing to present expert testimony about his mental state at the time of the offense.

At the evidentiary hearing, the Petitioner claimed that he never spoke to trial counsel about what their defense would be at trial. The Petitioner also claimed that trial counsel did not review with him the discovery materials provided by the State. Rather, she "just gave it to" him. The Petitioner further claimed that he had been in "Special Ed" classes in school and that he had to have someone in jail help him read the discovery materials.

The Petitioner testified that he asked trial counsel to file a motion to sever his case from the codefendant, but that she did not. The Petitioner explained that a severance was needed because "it was a conflict with [Mr. Mims's] pointing [at him] and [him] pointing [at Mr. Mims]." The Petitioner further explained that he felt he would have "came out with a lesser included offense of outcome" if there had been a severance.

The Petitioner admitted that he and Mr. Mims both claimed that Mr. Bridgewater had forced them to commit the robbery. The Petitioner further admitted that Mr. Mims testified at trial, that trial counsel cross-examined Mr. Mims, and that Mr. Mims's testimony "backed [] up" the Petitioner's duress defense. Post-conviction counsel conceded at the evidentiary hearing that there was no issue with the use at trial of Mr.

Mims's statement to the police because Mr. Mims testified and was subject to cross-examination by trial counsel.

The Petitioner testified that he talked to trial counsel about getting a mental health expert to testify at trial to show that he "wasn't fully developed." The Petitioner claimed that trial counsel did not present any evidence about his mental health. However, the Petitioner admitted that trial counsel called his mother to testify and asked her about how he had performed in school.

Trial counsel testified that she met with the Petitioner several times to review the case and discuss their trial strategy. Trial counsel testified that their theory of defense was duress and noted that both the Petitioner and Mr. Mims had "some learning disabilities." Trial counsel was not asked about her decision regarding the severance issue. However, trial counsel noted that the State proceeded under a theory of criminal responsibility because it was unclear who had fatally shot Mr. Ellington.

Trial counsel recalled that the Petitioner had received a competency evaluation by an expert for the State and that he was determined to be malingering. Trial counsel got a second expert to examine the Petitioner, and that expert opined that the Petitioner was competent at the time of the offenses, as well as competent to stand trial. Despite this, trial counsel subpoenaed her expert to testify at trial. Trial counsel recalled that her expert was angry when he received the subpoena and told her that "he couldn't help." Trial counsel testified that she felt she could not use any type of mental health defense at trial because both the experts would "say the same thing." However, trial counsel recalled that she asked the police officers who testified about the Petitioner's "learning disability."

On October 7, 2016, the post-conviction court entered a written order denying post-conviction relief. The post-conviction court concluded that the Petitioner had "not met his burden of proving [the factual allegations regarding] deficiency and prejudice by clear and convincing evidence." This timely appeal followed.

## ANALYSIS

The Petitioner contends that he received ineffective assistance from his trial counsel. Despite having conceded at the evidentiary hearing that there was no issue with the use of Mr. Mims's statement at trial, the Petitioner now argues that trial counsel was ineffective for failing to seek a severance because of the admission of Mr. Mims's statement. More troubling, the Petitioner argues that admission of Mr. Mims's statement was a violation of his right to confrontation "because [the] Petitioner had no reasonable opportunity to cross-examine his [codefendant] in regards to [the] statement," even though Mr. Mims testified at trial and was cross-examined by trial counsel. The

Petitioner also argues that he "suffers from mental retardation" and that trial counsel "was ineffective for failing to introduce, or even explore the possibility of, expert testimony to that affect." The State responds that the post-conviction court did not err in denying the petition.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness. Id. at 457.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel. Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

This court has previously noted that "astute defense counsel often prefer a joint trial as a matter of strategy." State v. Cook, 749 S.W.2d 42, 46 (Tenn. Crim. App. 1987). Failure to seek a severance is "amenable to attack as being professionally unreasonable"

if it was not the result of "a well-informed strategic decision." Cauthern v. State, 145 S.W.3d 571, 615 n.6 (Tenn. Crim. App. 2004). Because of this, testimony from trial counsel as to why she did not seek a severance is essential to determine whether trial counsel was ineffective. Without trial counsel's testimony or some other evidence indicating that her decision was not a strategic one, we must presume that trial counsel made a well-informed strategic decision. Furthermore, the evidence in this case supports this presumption.

Here, the Petitioner and Mr. Mims both maintained that they were forced to commit the robbery by Mr. Bridgewater. As the Petitioner admitted at the post-conviction hearing, Mr. Mims's statement and testimony "backed [] up" the Petitioner's claim of duress. Furthermore, the only difference between Mr. Mims's and the Petitioner's statements was that they each accused the other of having fatally shot Mr. Ellington. However, this fact was of no consequence given that the State proceeded at trial on a theory of criminal responsibility. The Petitioner's main argument on appeal is that the admission of Mr. Mims's statement at trial violated his right to confrontation. The record belies this claim because Mr. Mims testified at trial and was cross-examined by trial counsel.

With respect to the Petitioner's claim that trial counsel failed to present expert testimony regarding his mental state at the time of the offenses, we note that no such expert was presented at the post-conviction hearing. This court has long held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Generally, "this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Id. We cannot speculate as to what a witness may have said if presented or how the witness may have responded to a rigorous cross-examination. Id. As such, the Petitioner has failed to establish that he was prejudiced by trial counsel's not calling a mental health expert at trial.

Furthermore, the record belies the Petitioner's claim that trial counsel failed to "even explore the possibility of" calling such an expert. Trial counsel testified that the Petitioner was examined by an expert for the State and her own expert. Both of the experts concluded that the Petitioner was competent at the time of the offenses and to stand trial. Despite this, trial counsel still subpoenaed her expert, and he angrily responded that "he couldn't help." Furthermore, trial counsel questioned witnesses at trial about the Petitioner's performance in school and his "learning disabilities."

Accordingly, we conclude that the post-conviction court did not err in denying the petition.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE